## Silver v. Quality Lines, Inc.

S. *Walter Foulkrod, III,* for plaintiffs.

G. *Thomas Miller* and *Harvey Freedenberg,* for defendant.

DOWLING, *J.,* October 6, 1980—When the brakes on a fully loaded garbage truck failed, it rolled down a sharp incline. As it jumped the curb, the driver and his helper leaped overboard but Dr. Silver's house was unable to get out of the way and the vehicle entered into the living quarters. The resulting disturbance forms the object of the present suit and the jury's avoidance of plaintiffs'[1] damages the reason for the current opinion, they being as shocked by the verdict as they were by the intruding vehicle. To see if any post-trial therapy is called for, the testimony will have to be sniffed out.

Plaintiffs called as witnesses on liability the driver, James Hackney, one of his helpers, David

---

1. Both actions were by the Aetna Casualty and Surety Company who were subrogated to damages paid to the owners, Israel and Miriam Silver, and to the tenants, Mervin and Joanne Nicholson.

Hack, and the investigating officer, Kenneth Tindall. Hackney, an employe of defendant, Quality Lines, Inc., stated that he was operating a Diamond Reo garbage truck westerly on Locust Street and had been doing so for approximately four hours the morning of the accident. He testified that he had experienced no prior problems with the braking system on either the day of the accident or at any prior time during a period of some three months. He stopped the garbage truck on Locust Street with the transmission in neutral and his foot on the brake. Suddenly the vehicle began to move down the hill. Hackney heard the emergency brake "pop on" and saw a warning light on the dashboard indicating the air pressure in the brake system was dropping rapidly. As the truck began to accelerate, Hackney and another helper, Joseph Geesey, jumped off to avoid injury. The vehicle crossed an intersecting street, went over the sidewalk and smashed into the building. Hack, who was not on the truck at the time, testified to an earlier problem with the brake system but as he described it, it was not related to any brake failure. Officer Tindall testified to a conversation following the accident with the driver and Hack in which Hackney indicated that he had had earlier brake trouble and Hack told him that at one time he had quit because the company refused to fix the truck after he complained of bad brakes.

There was also further testimony by Hackney in which he denies ever having told the police officer that he had had brake trouble earlier that morning.

Vincent Lombardo, President of Quality Lines, Inc., testified that Hack had never complained to him about the operation of the brakes on the truck and had never told him that he was leaving work because of the failure of Quality Lines to make necessary repairs.

Joseph Geesey stated that they had finished loading and he was just getting into the cab when it started. He said the driver yelled that he had no brakes so he jumped. He said that Hackney had not indicated to him that he had had any problems prior to the accident, and he himself was not aware of any trouble with the braking system.

As his final witness on liability the defense offered an expert, one Raymond Houseal, who said that after the collision, he tested the braking system and found it to be free of any mechanical defect. In response to a hypothetical question, he testified that it was his opinion that the brake failure was caused by a frozen valve which allowed the escape of all air pressure from the system. It was his thought that the driver would have had no warning of this frozen condition and that there was nothing that he could have done to prevent it from occuring.

Plaintiffs assign three reasons to account for what to them was the odoriferous stench of the verdict or as Sir John Falstaff exclaimed: "[T]he rankest compound of villanous smell that ever offended nostril."[2]

It is first contended that the trial judge erred in admitting the expert testimony of Mr. Houseal on the issue of causation. A reading of his evidence in its entirety reveals that it does in several instances lack the necessary degree of certainty which the decisions seem to require. There are several places in the record where he opined that the brake failure was "probably" due to a frozen valve. However, he did respond in answer to a direct question from the court in the approved language:

---

2. W. Shakespeare, The Merry Wives of Windsor, Act III, Sc. 5.

"THE COURT: Do you have an opinion as to what caused—so you did tell us a frozen valve?

"THE WITNESS: Yes, I think it was a frozen valve."

It is perhaps unfortunate that the law appears to require an Ali Baba magic phrase to open the portal of expert opinion. Despite certain soft spots we feel Houseal's conclusion was for the jury. In this connection they were instructed:

"We had some experts that testified. We had one expert from the defendant as to the cause of the accident. We had several experts on the amount of damages. They gave their opinions because they are matters that we need guidance on. We are not familiar, most of us are not familiar, with the operation of trucks in the sense of possible defects in the truck or with how you determine the value of restoring a property to its original condition so we allowed experts to testify and they gave their opinion. But it is only their opinion. You view their testimony the way you would anyone else's. Scrutinize it and apply the same tests, consider their qualifications, their reliability, what reasons they gave for their conclusions. You are not bound by an expert's opinion simply because he is an expert. You may accept or reject it as in the case of any other witness. You give it the weight to which you deem it to be entitled."

There is an important consideration to keep in mind in evaluating Mr. Houseal's testimony and its effect on the jury. As will be discussed below, the burden of proof did not shift to defendant and it could have avoided a directed verdict on liability without presenting the testimony of a single witness. In each of the cases cited by plaintiffs in their

brief the challenged expert testimony was presented on behalf of plaintiffs who, of course, had the burden. In Feldman, Pennsylvania Trial Guide §7.80, it is stated that "[a]n opinion offered by the party not having the burden of proof need not be as precise, and it is sufficient for the defendant's expert merely to say that no opinion can properly be given from the available facts."

In Cady v. Mitchell, 208 Pa. Superior Ct. 16, 220 A. 2d 373 (1966), the Superior Court held sufficiently definite a physician's testimony on causation based upon the absence of any other explanation for the plaintiff's physical problem. Similarly, in the instant case, the test conducted under Houseal's supervision eliminated the possibility of a mechanical defect as a causal factor in the brake failure leaving only the frozen valve which Houseal described as a cause of the loss of air pressure in the brake system.

It has been stated that " 'the . . . admission of evidence [even if erroneous,] is not considered a ground for a new trial where no harm or prejudice has resulted.' " Kolb v. Hess, 227 Pa. Superior Ct. 603, 611, 323 A. 2d 217 (1974). In rejecting a motion for new trial based upon alleged error in the admission of evidence, the Superior Court has observed that a new trial is a "costly time consuming process which should be avoided except in clear cases of prejudicial error." Corl v. Corl, 222 Pa. Superior Ct. 152, 155, 292 A. 2d 541 (1972), citing Auerbach v. Philadelphia Transportation Company, 421 Pa. 594, 221 A. 2d 163 (1966). Recently, these principles were summarized by the Superior Court in Warren v. Mosites Construction Co., 253 Pa. Superior Ct. 395, 403, 385 A. 2d 397 (1978):

"Though we conclude that hearsay testimony

was erroneously admitted, this conclusion does not necessarily warrant the granting of a new trial. Error in the abstract is not an adequate reason to award a new trial. Granowitz v. Redevelopment Auth. of City of Erie, 432 Pa. 243, 247 A. 2d 623 (1968); Rankin v. McCurry, 402 Pa. 494, 166 A. 2d 536 (1961). Before a court will order a new trial, it must conclude that the errors at trial led to an incorrect result. Nebel v. Mauk, 434 Pa. 315, 253 A. 2d 249 (1969); Kitchen v. Borough of Grampian, 421 Pa. 464, 219 A. 2d 685 (1966). Unless there is a substantial reason therefor, a new trial should not be granted in a negligence case. Gombar v. Schaeffer, 202 Pa. Super. 28, 195 A. 2d 527 (1963). In an appeal from a jury trial, where the moving party alleges reversible error he must show not only the existence of the error, but also that the jury was misled by this error to his detriment. Anderson v. Hughes, 417 Pa. 87, 208 A. 2d 789 (1965); Kennedy v. Balogh, 397 Pa. 638, 156 A. 2d 847 (1959); Miller v. Montgomery, 397 Pa. 94, 152 A. 2d 757 (1959); Richter v. Mozenter, 356 Pa. 650, 53 A. 2d 76 (1947). It is only when improperly admitted evidence may have affected a verdict that a new trial will be the correct remedy. Verzella v. Caste Bros., 207 Pa. Super. 74, 215 A. 2d 264 (1965)."

Plaintiffs' second argument in support of their motion for new trial proceeds on a legal misconception. Citing Pascale v. Simmons, 406 Pa. 476, 178 A. 2d 549 (1962), and Floravit v. Kronenwetter, 255 Pa. Superior Ct. 581, 389 A. 2d 130 (1978), plaintiffs contend that defendant "must prove that the brakes did fail and that failure was through no fault of defendant."

In its charge, the court instructed the jury in accordance with the principles of section 328D of the Restatement, 2d, Torts, as follows:

"The plaintiff, in a sense, advances several theories of negligence. One of them is the fact that, under the law, an accident of this type; that is, a vehicle leaving the highway and going up on the sidewalk and running into a building, from that alone, you may infer—you may, you certainly do not have to—you may infer that this was negligence because that happened. Of course, there is a lot of evidence in the case as to why it happened and there is other evidence as to the possible negligence, but that fact alone, because that is the sort of thing that ordinarily does not occur in the absence of negligence. Trucks are designed to be driven upon the highway, not upon the pavement, you understand that. . . . (I)t may be inferred that the damage to the plaintiff is caused by negligence of the defendant when the accident is of a kind which ordinarily does not occur in the absence of negligence, other responsible causes including the conduct of third persons are sufficiently eliminated by the evidence and the indicated negligence is within the scope of the defendant's duty to the plaintiff.

"It is the function of the jury to determine whether the inferences to be drawn in any case where different conclusions may reasonably be reached and certainly, under the evidence in the case you could reach different conclusions. It is for you to decide whether or not you can draw this inference of negligence from the manner in which the accident happened."

Since the decision of the Supreme Court of Pennsylvania in Gilbert v. Korvette's, Inc., 457 Pa. 602, 611, 618, 327 A. 2d 94 (1974), section 328D has been the law of Pennsylvania. It is enlightening to consider the Supreme Court's formulation of the doctrine in Gilbert:

"[W]e believe the time has come to reject our earlier duty-oriented doctrines of circumstantial proof and replace them with a single doctrine based on appropriate evidentiary concerns. Res ipsa loquitur is neither a rule of procedure nor one of substantive tort law. It is only a shorthand expression for circumstantial proof of negligence—a rule of evidence.

"...

"When res ipsa loquitur is properly regarded under section 328D as a simple matter of circumstantial proof, it cannot realistically be viewed differently from any other method of circumstantially proving facts in issue. See McCormick's Handbook of the Law of Evidence §342, at 805 (2d ed. E. Cleary 1972). Circumstantial evidence in all negligence cases therefore can create only a permissible inference of fault 'unless the facts are so compelling that no reasonable man could reject it.' Restatement (Second) of Torts §328D, comment m (1965)."

In Pennsylvania Liquor Control Board v. City of Philadelphia, 17 Pa. Commonwealth Ct. 627, 632, 333 A. 2d 497 (1975), the evidentiary effect of application of the doctrine of res ipsa loquitur was further elaborated: "Section 328D . . . should be viewed simply as a method of circumstantially proving facts in issue, and . . . circumstantial evidence [can] create only a permissible inference of fault in negligence cases and [can] not result in a shifting of the burden of proof."

Plaintiffs contend that the burden of proof shifted to defendant to prove that the accident occurred as a result of a brake failure. They assert that the occurrence of the accident in the manner which they

established, that is, the truck leaving the highway and striking the building, creates a *presumption* of negligence rather than an *inference* and that defendant's testimony was not sufficient to rebut this presumption. It might seem quite clear from the above decisions that such an incident creates only an inference, but plaintiffs' point to a recent decision of our Superior Court, Catina v. Maree, _____ Pa. Superior Ct. _____, 415 A. 2d 413, 424 (1980), where Judge Price said:

"Appellant next contests the court's failure to distinguish between an inference and a presumption. Specifically, the court read appellants' point for charge 18: 'When the driver's vehicle leaves the highway and causes injury and damage, you may infer that the driver was negligent and that the defendant-driver then has the burden of exculpating himself by an acceptable explanation that the accident occurred through no fault of his own.' (N.T. 843). While inference and presumption are two of the most elusive members of the family of legal terms, we need not deal here with their myriad facets. Rather, the distinction may be simply drawn thusly: when a party places before the jury fact A, and asks them to deduce fact B therefrom, if the jury finds fact A, then an inference permits them to find fact B, whereas a presumption compels them to find fact B unless the other party presents evidence to rebut either fact A or the logical connection between facts A and B. In other words, a presumption shifts the burden of going forward with the evidence, while an inference does not. Consequently, it can be seen that the judge in his charge was, in fact, describing a presumption, because he explicitly shifted the burden to appellees. Moreover, in a later charge on this same point, the

court stated: 'If you find that the plaintiff, Lawrence Catina, was off the highway at the moment that he was hit, then you must find that the defendant's hitting him constituted negligence.' (N.T. 857). This certainly carries the import not only of a presumption but of a rule of law. In light of this later charge, the fact that the substance, if not the precise terminology, of the earlier charge was correct, and the prior practice of the courts themselves in occasionally using the terms interchangeably, we can perceive of no error."

We have read and reread this unsettling excerpt and it does appear to be inconsistent with Gilbert and subsequent decisions. Yet there is no reference in the Catina opinion to section 328D of the Restatement, 2d, Torts, or to Gilbert v. Korvette's, Inc. In view of the definitive announcement of the Supreme Court we do not feel justified in accepting this as controlling authority in the instant situation and stating that the Superior Court at least has reverted to the old rule that a presumption, rather than an inference, is created in situations of this nature.

In any event, a verdict in favor of defendants could stand even if the jury had been instructed that the fact that defendant's garbage truck left the road would create a presumption of negligence. If the jury accepted the testimony of the driver, Hackney, he was exonerated of any negligence and it could have returned a verdict for defendant.

Perhaps the concluding observation from the disturbing Catina decision, at p. 425, is pertinent to our consideration of the several arguments advanced by plaintiffs:

"[O]ur judicial conscience is not so shocked as to accede to appellants' request for a new trial. This

case, as in many accident situations, centered primarily on the credibility of the witnesses, and it was solely for the trier of fact to evaluate those witnesses and accord weight to their testimony. Burbage v. Boiler Engineering & Supply Co., Inc., 433 Pa. 319, 249 A. 2d 563 (1969). We cannot substitute our judgment for that of the fact finder when the verdict is supported by creditable evidence."

Plaintiffs' final point has nowhere near the stature of the previous two. They contend that the court should have admitted evidence that defendant was insured by Nationwide Mutual Insurance Company because they elected to bring the action in the name of the Aetna Casualty and Surety Company as use-plaintiff. The general rule, of course, is that it is improper to admit evidence of insurance coverage. Plaintiffs cite no authority for their novel argument, nor does this come within any recognized exceptions.

Accordingly, we enter the following

## ORDER

And now, October 6, 1980, plaintiffs' motion for new trial and motion for judgment non obstante verdicto are denied.