Kennedy, Appellant, *v.* Balogh.

Argued October 7, 1959. Before JONES, C. J., BELL, JONES, COHEN, BOK and MCBRIDE, JJ.

*James A. Ashton,* for appellant.

*David J. Armstrong,* with him *Dickie, McCamey, Chilcote & Robinson,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, December 30, 1959:

In this action for damages for personal injuries, received in an automobile accident, the jury returned a verdict for the defendant. The plaintiff moved for a new trial which the court en banc refused and entered judgment on the verdict. The plaintiff has appealed and assigns for error alleged refusal of the trial judge to receive and pass upon submitted points for charge and for several alleged errors in the court's charge.

The accident in which the plaintiff received the injuries in suit occurred on a night in March on Ohio Avenue, in the Borough of Glassport, Allegheny County. In the area where the accident occurred, Ohio Avenue is wide enough to accommodate four lanes of traffic. Streetcar tracks occupy the two inside lanes and there was testimony indicating that cars were permitted to park along the sides of the street in the outside lanes, so that, actually, only the two center lanes were available for moving vehicular traffic in opposite directions.

As the plaintiff was driving his automobile south on Ohio Avenue, a truck loaded with planks emerged from a parking lot on the east (or plaintiff's left) side of Ohio Avenue. The truck crossed over the two northbound lanes and turned left on the southbound side of the Avenue. At the time the truck turned onto the southbound side of the Avenue, the plaintiff's car was between 50 and 200 feet away. The point at which the truck had entered the Avenue was between 75 and 125 feet north of the intersection of Ohio Avenue and Broadway Street. The truck, followed by the plaintiff's car, proceeded south on Ohio Avenue until it

came to the intersection with Broadway Street where it started to make a left turn. As the truck was turning, its left side either struck or was struck by the automobile of the plaintiff who was attempting to pass the truck at the intersection.

The plaintiff instituted his action in trespass against Joseph Balogh, the owner of the truck, and Joseph's brother, Frank, who was operating the truck at the time of the accident. By agreement of counsel at trial, the court entered a compulsory nonsuit as to Joseph Balogh, which action is unquestioned and of no moment on this appeal.

There were a number of sharp conflicts in the testimony adduced by the respective sides on material issues. According to the plaintiff's testimony he was in the left, or inner, southbound lane, i.e., the streetcar track lane, when he attempted to pass the truck and the truck turned to the left from the right, or outside, curb lane. The defendant and three disinterested witnesses, whom he called, all testified that the truck turned left from the left, or inner, southbound lane. The plaintiff testified that he was traveling between 20 and 25 miles an hour at the time he attempted to pass the truck, whereas three witnesses for the defendant testified that the plaintiff's speed at the time was between 50 and 60 miles an hour. The plaintiff also testified that the defendant truck driver did not signal an intended turn. Directly to the contrary, the defendant and two witnesses testified that he did so signal by the use of the truck's electric turn signal.

Plaintiff's main contention is that the trial judge erred in not accepting and ruling upon thirteen written points for charge which his counsel submitted but voluntarily withdrew when, as the appellant now charges, the trial judge expressed his displeasure at the number. This implied indictment of the trial judge's action is not borne out by the record.

Upon the plaintiff's submission of his thirteen requests for charge, the trial judge saw that, for the most part, they were abstract statements of law, taken from appellate court decisions with citations included, and bald quotations from The Vehicle Code with Purdon's references, without any specially indicated application to possible factual findings under the evidence. The court told counsel that the case was uncomplicated and would be decided entirely for the side where the jury placed the credibility of the testimony, which was manifestly so. Plaintiff's counsel, as he himself admits, then voluntarily withdrew the points which he had submitted. However, in after-verdict argument in the court below and now here also, plaintiff's counsel asserts that he withdrew the submitted points because the trial judge had "indicated his displeasure in counsel submitting thirteen (13) points for charge to the Court." For a review of the complaint concerning the alleged conduct of the trial judge, in respect of the submitted points, the plaintiff neither made nor offered to make at the trial any record that could possibly be considered a proper basis for an assignment of error to bring the matter up for appellate review. Nevertheless, the trial judge, of his own motion, in order that the plaintiff might not be at any disadvantage, on appeal to this court, entered an order (after dismissal of the plaintiff's motion for a new trial) directing that the proffered points for charge be filed of record, which was done, and we have carefully examined them as they now appear in the record.

Except for points 11 and 12, to which further reference will hereinafter be made, the submitted points are precisely what the trial judge denominated them—general statements of law unapplied to any finding that the jury might possibly make from the proven facts of the case. So that, even though appellant's allegation of prejudicial conduct on the part of the trial judge,

in respect of the submitted points for charge, is neither competently raised nor supported by the trial record, we have reviewed the entire record, as augmented after judgment by inclusion of the withdrawn points, and find the plaintiff's complaint to be without merit. It is plain enough that the plaintiff was not harmed by the withdrawal of his points for charge regardless of what motivated him in such action. The record confirms that the points were voluntarily withdrawn "without the slightest judicial coercion." In any event, the fact that the points were not passed upon by the trial court is no longer of any moment in view of what happened subsequently.

At the conclusion of the charge, the trial judge asked whether counsel for either party had "any suggestions for additions, corrections, or amplifications." Thereupon, counsel for the plaintiff made three separate requests for further charge, which we shall consider seriatim.

The first request was as follows: (1) "Counsel for plaintiff would like to except to that portion of the Court's charge dealing with the recent Supreme Court [sic] decision, 181 Pennsylvania Superior Court 181, and would submit to the Court that the case of Kaylor v. Maher, 366 Pennsylvania 633, is controlling in the instant factual situation. I would respectfully request the Court to call that case to the attention of the jury under these circumstances. THE COURT: Is that where one lane is concrete and the other is macadam? MR. ASHTON: Yes. THE COURT: That question of parking didn't come into that at all. . . . Exception granted. I refused his point."

In Kaylor v. Maher, supra, which the plaintiff cited, the highway upon which the accident there happened consisted of two lanes in each direction, the two inner lanes being made of concrete and the outer two of macadam. We held that the mere fact that the lanes

were made of different paving materials did not justify a conclusion that what was a four-lane highway in fact was only a two-lane traffic highway. The importance of the question whether the highway upon which the involved vehicles were traveling was a four-lane or a two-lane thoroughfare stems from the fact that Section 1008(c) of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, §2 (75 PS §543(c)) condemns an operator's passing another car, traveling in the same direction, at an intersection of a two-lane highway. Consequently, since the plaintiff in the instant case was attempting to pass the defendant's truck at an intersection, whether the highway was in fact two-lane or four-lane for moving vehicular traffic was a pertinent issue to be resolved by the jury. The decision in the *Kaylor* case was not, as counsel for the plaintiff mistakenly asserts in his above-quoted point, "controlling in the instant factual situation."

The rule of the *Kaylor* case would be applicable only if the jury found that the four-lane highway was not restricted, by permissible curb parking on each side of the highway, to the inner two lanes for moving traffic. The trial judge appropriately charged in this connection as follows: "Now, it has been held by our Superior Court that where there is a highway that can accommodate two lanes of traffic but that the curb lane is permitted to be used for parking, that that reduces the roadway to a single lane of traffic and that, therefore, any person at the rear of another slower moving vehicle would be violating the provisions of the Motor Vehicle Code if he attempted to pass the slower moving vehicle in an intersection." By so charging, the trial judge correctly instructed the jury in accordance with the rule as stated in *Commonwealth v. Gugliotta*, 181 Pa. Superior Ct. 181, 124 A. 2d 466, which we approve, and is in no sense inconsistent with the ruling

in *Kaylor v. Maher*.   What the Superior Court correctly held in the *Gugliotta* case was that, even though a highway is four lanes in width, any time that it is permissibly so utilized as to restrict its accommodations for *moving* traffic to one lane in each direction, it is a two-lane highway within the intent and interdiction of Section 1008 of The Vehicle Code, as amended (75 PS §543(c)).

(2) Plaintiff's counsel stated his next request as follows: "In addition I request the Court to charge on the sudden emergency, that if the defendant by his original act of negligence, if they so found that he was originally negligent and placed the plaintiff in the position that in order to avoid this collision originally he was forced to pass at that intersection, then this sudden peril that he found himself in would excuse him."

The trial judge correctly pointed out that there was nothing in the evidence that would render applicable the rule as to satisfactory care in the circumstances of a "sudden emergency".   The collision in this case did not occur when the defendant drove his truck onto and across Ohio Avenue to proceed southward.   According to his own testimony, the plaintiff was, at that time, at least 50 feet to the rear; he was traveling at a speed from 20 to 25 miles per hour; and the truck which he was behind moved forward at least another 75 feet before his automobile and the defendant's truck came into collision.   It will hardly be argued that the plaintiff, driving at the speed he estimated, could not have stopped within the 125 feet in order not to come in contact with the defendant's truck.   If there was any emergency, sudden or otherwise, it was the result of the excessive speed of 60 miles per hour at which the plaintiff was driving on Ohio Avenue as testified to by three disinterested pedestrian eyewitnesses.   As said in *Gajewski v. Lightner*, 341 Pa. 514, 517, 19 A. 2d 355,

"It is futile for him to argue that, in these circumstances, an emergency situation existed and he is excused for not exercising the care of a reasonable man. That principle is never applicable if the impending peril was caused by his own antecedent negligence: Casey v. Siciliano, 310 Pa. 238." The rule which permits of a lessening, in the case of a sudden emergency, of the degree of care required in normal circumstances is not available to one whose negligence produces the emergency. See *Miller v. Southern Asphalt Company,* 314 Pa. 289, 297, 171 A. 472.

(3) The following is the plaintiff's third and last after-charge request, viz., "I have one additional request. I would like the Court to charge as the Pennsylvania Motor Vehicle Code provides, the driver of any vehicle upon a highway before starting, stopping, or turning from a direct line shall first see that the movement can be made in safety."[*] The court refused to so charge additionally, saying, with respect to the plaintiff's request, "I read that to them [i.e., the jury] early in the charge." What the trial judge had instructed the jury in connection with the defendant's turning of the truck was as follows: "Negligence may also result, if it is the proximate cause, from failure to obey certain mandatory provisions of the Pennsylvania Motor Vehicle Code. And with particularity in this case, depending upon what facts you might find, then there may be two provisions of that Code that are mandatory and may come into deliberation by you after you have found the facts. For example, there is one provision that it is the duty of any person who is going to stop, or start, or turn, to signal to vehicular traffic that is following of his intention to so do. Now, the signal,

---

[*] This request embodied what had been dealt with in points for charge, 11 and 12, which the plaintiff voluntarily withdrew, as hereinabove stated.

of course, for a left turn is either the automatic light signal, or it can be a hand signal, or any signal that clearly indicates to drivers of traffic at the rear that something unusual, something rather than going straight ahead, is going to be done by the operator of the car ahead." While the court might well have added that the driver of a motor vehicle, upon signalling for a turn from his direct line of travel, also had the duty of first seeing that such movement could be made in safety, failure to specifically so instruct the jury, even if error, was harmless in view of the jury's verdict, as a moment's reflection will make plain.

There are two hypotheses in connection with the jury's verdict, viz., the jury either (1) found the defendant guilty of negligence or (2) it did not so find. If the jury found the defendant guilty of negligence then, obviously, it must also have found the plaintiff guilty of contributory negligence, as evidenced by the verdict for the defendant. Since, under the first hypothesis stated, the jury found the defendant guilty of negligence, then any further instruction to the jury with respect to what could constitute negligence on the part of the defendant, depending upon their finding as to whether the defendant first saw that the left turn could be made in safety, would be surplusage and unnecessary, the defendant's negligence having been otherwise established. The failure to charge additionally as requested by the plaintiff was harmless and consequently not reversible error. On the other hand, if the jury did not find the defendant guilty of negligence, then it must have accredited the testimony that the defendant's electric signal for a left-hand turn into Broadway Street was showing from the time the defendant entered and turned left on Ohio Avenue until the collision at the Broadway Street intersection, a distance of at least seventy-five feet, during part of which time the plaintiff, traveling, according to his own testimony, at a speed of 20 to 25 miles per hour,

was behind the truck. While the defendant had a duty to see before he started the movement that his left turn could be made in safety, so also did the plaintiff have a corresponding duty to first see, before he attempted to pass around the truck, that the maneuver could be made in safety—a duty which the plaintiff must necessarily have breached when he did not heed the warning of the truck's signal for a left-hand turn. The plaintiff was, therefore, guilty of negligence in not obeying the truck's appropriate signal and in then attempting to pass around the truck on the left-hand side while it was turning. Such contributory negligence on the part of the plaintiff renders immaterial any possible negligence on the part of the defendant that the jury might have found had the trial judge additionally charged, as the plaintiff requested. Here again, even if error, the court's refusal to so charge was harmless.

The court's refusal of the plaintiff's motion for a new trial and its entry of judgment on the jury's verdict for the defendant were what the law clearly indicated was the just course in the circumstances. Faith in our system of judicial procedure requires that a jury's verdict be sustained whenever a trial record is as devoid of harmful error as is the one presently before us. The case was fairly tried. There is not a single assignment of error questioning any of the trial judge's rulings on the admission or rejection of evidence. It was also submitted to the jury in a comprehensive charge which, when read in context and in its entirety, gave the jurors a fair and unbiased presentation of the issues which it was their duty to resolve. Not a line of what the court said in its charge was excepted to by the appellant. The only exceptions came when the court refused to charge additionally in terms requested by the plaintiff. We find no prejudicial error in the court's refusal so to do.

Judgment affirmed.