## Henry et al., Appellants, v. Trabosh.

*Bernard Mendelsohn,* with him *Elliot B. Goldstan,* and *Baskin & Mendelsohn,* for appellants.

*George R. Eves,* for appellee.

OPINION BY CERCONE, J., June 14, 1973:

This appeal comes before us on plaintiff-appellants' motion for new trial in a trespass action based on matters involving weight of evidence and trial error. The court refused the motion, but we are of the opinion a new trial is warranted.

On March 12, 1969, at or about 5:00 p.m., a collision between two automobiles occurred at the intersection of highway route 61 and legislative route 06002 in Perry Township, Berks County. Route 61 is a four-lane divided through-highway, 48 feet wide, having two lanes running in each direction, north and south, with a four-foot medial strip. Route 06002 is an intersecting road running in an east to west direction, 16 feet 9 inches wide and having a stop sign at the intersection. Defendant was operating her vehicle in a westerly direction on route 06002 where it intersects with route 61. Defendant stopped at the stop sign where she had a view of 500 feet northward, the direction of plaintiffs southbound travel, and when there was no traffic visible, started across route 61. When she reached the medial strip of route 61, she again looked to her right in a northerly direction and first saw plaintiff-Henry's car approximately 150-200 feet up the road approaching at what she estimated to be 65 miles per hour. Defendant, who was then traveling at 15-25 miles per hour, did not stop but continued to cross the south-

erly lanes of route 61 on which plaintiff was traveling in the lane furthest from the medial strip where the collision occurred. Plaintiff-driver-Henry testified he first saw defendant's car in the middle of the two northerly lanes of route 61 when he was 150-200 feet away from the intersection at which time he blew his horn and applied his brakes slightly. At trial plaintiff-Henry testified he saw defendant slow down at that point and then "come right out and right into me", at which time he applied his brakes hard and immediately, leaving a skid mark of 68 feet to the point of impact.* At trial, when asked why she entered the southern lanes where the collision occurred, defendant driver answered as follows: "Q. Mrs. Trabosh, when you first saw Mr. Henry's car, you say you were at the middle of the highway? A. Yes. Q. And he was about 150 to 200 feet to your right, going about 65 miles an hour; is that correct? A. This is my judgment. Q. Why didn't you let him go by? A. How could I? If I had stopped traveling at the speed, you know, from pulling out at the stop sign, I wouldn't have stopped right in the middle of the highway; I would have traveled some distance and this would have brought me directly into his lane."

It is on these facts that we now decide the merit of plaintiff's objection to the lower court's inclusion in its charge the following instruction on sudden emergency: "There is also one other rule that may be helpful to you in your consideration of the case, depending upon the facts that you find, and that is the rule of sudden emergency. The sudden emergency rule is that, where

---

* Plaintiff Leland F. Henry testified he was traveling at 50-55 miles per hour when he first saw defendant in the northerly lanes. Defendant testified that she estimated plaintiff's speed to be 65 miles per hour although she could fix no time or distance within which she observed plaintiff's speed.

one finds himself in a position of danger that was not the result of his own negligence, he will not be held responsible if he makes a mistake of judgment in extricating himself from the dangerous situation in which he finds himself. One confronted by a sudden perilous situation not created by some fault of his own is not required to exercise the highest or even the ordinary degree of judgment. And when I use the masculine 'his', it can be transposed to the feminine 'her', and 'him' to 'her', depending on the facts as you find them."

At a later point in the charge, the judge said: "You will also, of course, remember what I said to you about sudden emergencies, and this can apply to either one or the other or both of these parties in this case, as you find the facts."

Anyone driving from an intersecting street onto a through highway, especially a high speed-limit one, must anticipate and be ready to meet a situation such as the one which the defendant faced on the day of the accident. There was no unforeseen circumstance which arose prior to the collision. Plaintiff was traveling about 65 miles per hour on a 60 mile-per-hour highway and defendant was traveling on an intersecting street about 15 to 20 miles per hour, all within normal range of travel, especially when defendant had no way of judging correctly plaintiff's speed and in the light of plaintiff's testimony that he was traveling between 50 to 55 miles per hour when he first saw defendant in the northerly lanes of route 61. The sudden emergency rule will not apply if the emergency arises through the prior negligence of the person in whose behalf the court invokes its protection. The rule does not excuse the fault of one who by his own antecedent negligence creates the emergency or whose conduct has brought about or created the emergency: *Casey v. Siciliano*, 310 Pa. 238 (1933); *Gajewski v. Lightner*, 341 Pa. 514 (1941);

*Arble v. Murray,* 359 Pa. 12 (1948). Thus one who by his own negligence has created an emergency is not excused by reason of the fact that he did not have time to act as he otherwise would have acted: *Atkinson v. Coskey,* 354 Pa. 297 (1946).

In the instant case it was defendant's duty, under all the circumstances, to have her car under such control as to permit her to stop in the medial strip (or at least in the lane closest to the medial strip) in order to let plaintiff drive by in his lane furthest from the medial strip.

As this court stated in the case of *Porreca v. North Cleaners and Dyers, Inc.,* 146 Pa. Superior Ct. 504 (1941) : " 'While the plaintiff complied with the statutory duty imposed upon him on approaching a through highway by stopping the car before entering the intersecting street and likewise complied with the requirement that he should look in both directions before entering the intersection, his duty did not end there. He was required to yield the right of way to vehicles approaching from either direction on the through highway. . . When the plaintiff moved forward and entered the intersection it was also his duty to continue to look as he advanced into the intersection and to keep his car under such control that he could stop at any moment and avoid a collision.' " In the case of *Sluganski v. Andrews,* 177 Pa. Superior Ct. 344 (1955), we stated that it was a driver's duty to look and yield at the middle of an intersection as well as upon entry. This would be especially true of a driver entering a through highway from an intersecting street unless he could in the exercise of reasonable care and prudence have crossed the through highway safely: Act of April 29, 1959, P. L. 58, §1014(c), as amended. Had defendant in this case exercised that degree of care so required of her under the circumstances, she would not have found

it impossible to bring her vehicle to a stop before striking plaintiff's vehicle. Any emergency with which she claims to have been presented was thus of her own making. The trial court's instructions as to sudden emergency therefore gave defendant an advantage to which she was not entitled. This was highly prejudicial error requiring a new trial: *Fisher v. Dye*, 386 Pa. 141 (1956).

Order reversed; case remanded for new trial as to all parties.

SPAULDING, J., concurs in the result.

WATKINS and JACOBS, JJ., dissent.