COMMONWEALTH of Pennsylvania, Appellee,

v.

Louis T. MATRONI, Jr., Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 10, 2006.

Filed April 19, 2007.

---

Andrea E. Mertz, Public Defender, Reading, for appellant.

Douglas J. Waltman, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: STEVENS, BOWES, and McCAFFERY, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellant, Louis T. Matroni, Jr., appeals from an April 11, 2005 judgment of sentence entered in the Court of Common Pleas of Lancaster County. We affirm.

¶ 2 This case stems from a March 5, 2004 auto accident which caused the death of Susan Story. As a result of the accident, Matroni was charged with homicide by vehicle under 75 Pa.C.S.A. § 3732, a felony in the third degree, as well as the summary offenses of overtaking a vehicle on the right, 75 Pa.C.S.A § 3304, reckless driving, 75 Pa.C.S.A. § 3736, following too closely, 75 Pa.C.S.A. § 3310, driving on roadways laned for traffic, 75 Pa.C.S.A. § 3309, and driving at a safe speed, 75 Pa.C.S.A. § 3361. Following a March, 2005 jury trial, Matroni was found guilty of all charges. He was subsequently sentenced to eight to 23 months' imprisonment on the homicide by vehicle conviction. After a motion to modify his sentence was denied, Matroni filed this timely appeal on May 2, 2005.[1] He raises the following issues for our review:

A. Whether the evidence was insufficient to support the verdict of the jury finding the defendant guilty of homicide by vehicle when the Commonwealth failed to prove beyond a reasonable doubt that the defendant acted recklessly or with gross negligence?

B. Whether the lower court erred when it improperly instructed the jury that in order to invoke the sudden emergency doctrine that the defendant was required to prove that there was a sudden emergency by a preponderance of the evidence?

C. Whether the imposition of a sentence of not less than 8 nor more than 23 months was a manifest abuse of discretion when the defendant had no prior criminal record, a stable family life, a good work history and the court improperly speculated that the defendant lacked remorse based on his observations of the defendant's demeanor during trial?

Appellant's brief at 5.

¶ 3 We turn first to Matroni's argument that the evidence was insufficient to support a conviction for violation of Section 3732 of the Vehicle Code. Pursuant to that section:

Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a). Thus to sustain a conviction under Section 3732(a), the Commonwealth was required to prove that Matroni caused the death of Susan Story by acting recklessly or with gross negligence, while violating a law or municipal ordi-

---

1. He has complied with the lower court's order to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal.

nance under the conditions set forth in the statute. 75 Pa.C.S.A. § 3732(a).

¶ 4 Here, Matroni does not dispute that his actions caused Susan Story's death. Nor does he dispute that he violated the law by committing the five summary offenses for which he was charged. Instead, Matroni limits his argument on appeal to an assertion that the Commonwealth failed to prove that he acted with the required recklessness or gross negligence. Appellant's brief at 14.

■■■ ¶ 5 To determine whether the Commonwealth met its burden of proof in this regard, we must view the evidence in the light most favorable to the Commonwealth, as verdict winner. *Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa.Super.2004).

> As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Instead, we review the totality of evidence offered at trial to determine if it lends adequate support to the verdict. *See Commonwealth v. Cassidy*, 447 Pa.Super. 192, 668 A.2d 1143, 1144 (Pa.Super.1995) (noting that this court "may not weigh the evidence and substitute [its] judgment for the fact-finder").

*Kinney*, 863 A.2d at 584. The evidence introduced during Matroni's trial, when viewed in such a light, revealed the following:

¶ 6 In the pre-dawn hours of March 5, 2004, Matroni was traveling in the left southbound lane of the Fruitville Pike, in Lancaster County. N.T. 3/4/05 at 451. Luis Ortiz was stopped at a red light in the right southbound lane when he first ob-served Matroni's car as it stopped beside him. N.T. 3/2/05 at 136. When the light turned green, Ortiz pulled out. *Id.* at 137. He did not note the actions of Matroni's car, but as Ortiz continued along the Fruitville Pike at approximately 40 miles per hour, he observed a tractor trailer traveling in the left southbound lane five to seven car lengths ahead of him. *Id.* at 138, 140. The tractor trailer, a flat-bed carrying a piece of machinery, had its lights on. *Id.* at 139–140.

¶ 7 As Ortiz continued to travel in the right southbound lane, a pick-up truck passed him in the left southbound lane, tailgated by Matroni's car. *Id.* at 145. Ortiz estimated that Matroni was traveling around 60 miles per hour, and was only a foot away from the pick-up truck in front of him. *Id.* at 145–146. At this point, all three vehicles were approaching the tractor trailer traveling in the left southbound lane. *Id.* at 146. After the pick-up truck and Matroni passed Ortiz, they cut in front of his vehicle into the right southbound lane. *Id.* at 147. Once in the right southbound lane, the pickup slowed down. *Id.* at 147–148.[2] Ortiz observed Matroni brake, cut into the left southbound lane, directly behind the tractor trailer, brake again, then cut back into the right southbound lane. *Id.* at 147–149. At that point, Matroni lost control of his car, swerved back into the left southbound lane, appearing to Ortiz to strike the tractor trailer, bounce off, then swerve and strike the tractor trailer again. *Id.* at 149–150, 154–156.

¶ 8 When asked to explain the result of the impact of Matroni's car with his tractor

---

2. We note with extreme displeasure that in direct contradiction to the actual testimony, Matroni's appellate brief states that "Ortiz believed that the pick up-truck suddenly **put on its brakes**...." Appellant's brief at 17 (*citing* N.T. 3/2/05 at 147–150) (emphasis add-ed). In fact, when Ortiz was asked to characterize the pick-up truck's deceleration, he specifically stated "I would say that he just took his foot off the gas," and "I would have seen the lights if he would have pressed the brakes." N.T. 3/2/05 at 147–148.

trailer, the tractor trailer driver testified that he felt a jolt, and his truck was pushed to the left. N.T. 3/2/05 at 96. Despite his best efforts to steer to the right, the truck would not respond and veered into the oncoming traffic in the northbound lanes, where it struck the vehicle driven by Susan Story. *Id.* at 96–98, 100–102. Mrs. Story died as a result of the multiple traumatic injuries caused by the collision. N.T. 3/3/05 at 226.

¶ 9 The Commonwealth also introduced testimony from Sergeant Jeffrey Jones, a vehicle collision analysis and reconstruction expert employed by the Manheim Township Police Department. N.T. 3/3/05 at 294. Sergeant Jones responded to the scene of the accident and performed a comprehensive investigation, which included mapping the scene, collecting evidence, interviewing witnesses and the involved parties, and inspecting the vehicles. *Id.* at 304, 369. As the result of his findings, Sergeant Jones expressed his unequivocal expert opinion that the cause of the collision between Matroni's car and the tractor trailer was Matroni's reckless driving, including speeding and erratic lane changes. *Id.* at 372. Sergeant Jones further rendered an unequivocal expert opinion that the collision between Matroni's vehicle and the tractor trailer in turn caused the tractor trailer to collide with Susan Story's vehicle. *Id.* at 369–371. Specifically, Sergeant Jones explained that Matroni's action in driving his vehicle into the right front wheel of the tractor trailer forced it to turn into the oncoming traffic where it collided with Susan Story's vehicle. *Id.* at 368–369.

¶ 10 We find that the above evidence, which showed that Matroni was speeding, tailgating, and erratically changing lanes, was sufficient to show that he acted in a reckless and grossly negligent matter.

¶ 11 "The concept of gross negligence is encompassed within the concept of recklessness as set forth in Section 302(b)(3) [of the Crimes Code]." *Commonwealth v. Grimes*, 842 A.2d 432, 434 (Pa.Super.2004) *(citing Commonwealth v. Huggins*, 575 Pa. 395, 836 A.2d 862 (2003)).[3] Section 302, which pertains to the "General requirements of culpability," states that:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

¶ 12 Although Matroni asserts that his actions were not reckless, we disagree. His course of conduct immediately prior to the accident violated five separate provisions of the Vehicle Code. Matroni does not dispute that he violated Section 3736, which states that "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S.A. § 3736(a). Nor does he argue that he was

---

3. In *Grimes*, the defendant/appellant drove his car across the center line into oncoming traffic, striking the victim's car and killing him. *Grimes*, 842 A.2d at 433. The resulting conviction under Section 3732 was affirmed by a panel of this Court. *Id.* The *Grimes* Court noted that although *Huggins* "discusses the

distinction between negligence, gross negligence and recklessness in the context of 18 Pa.C.S.A. § 2504, Involuntary manslaughter, the rationale is equally applicable to 75 Pa. C.S.A. § 3732, Homicide by vehicle." *Grimes*, 842 A.2d at 433 n. 5.

not in violation of Section 3310 when he tailgated the vehicles in front of him without due regard for their speed. 75 Pa. C.S.A. § 3310. Neither does Matroni claim that he was driving at a safe speed in order to avoid violation of Section 3361. No challenge to his violation of Section 3304 for overtaking a vehicle on the right was made, and it is undisputed that he failed to comply with 75 Pa.C.S.A. § 3309, by changing lanes without first ascertaining that the movement could be made with safety.

¶ 13 We find that Matroni's actions evidenced a conscious disregard of the substantial and unjustified risk that he would be involved in a traffic accident causing death. His cumulative conduct was reckless, and the evidence supports the jury's finding that he was guilty of homicide by vehicle beyond a reasonable doubt.

¶ 14 Matroni also seeks relief on appeal by arguing that "the lower court erred when it improperly instructed the jury that in order to invoke the sudden emergency doctrine that the defendant was required to prove that there was a sudden emergency by a preponderance of the evidence." Appellant's brief at 5. For the following reasons, we find that Matroni is not entitled to reversal on these grounds.

¶ 15 A review of the record shows that Matroni requested the trial court to instruct the jury on the sudden emergency doctrine[4] based on his claim that while driving prudently, he was faced with a perilous situation. The Commonwealth, which, as we noted above, had introduced substantial evidence that Matroni had been driving recklessly, opposed such an instruction. N.T. 3/7/05 at 625. The trial court consented to Matroni's request, and included an explanation of the sudden emergency doctrine in its jury instructions.

¶ 16 The portion of those instructions pertinent to the question currently before us began with the definition of homicide by vehicle, in accordance with Section 3732 of the Vehicle Code. N.T. 3/7/05 at 653. The trial court then explained that "the defendant has been charged with vehicular homicide while engaged in violating five sections of the Vehicle Code." *Id.* at 653. The trial court specifically explained to the jury that:

4. In *Lockhart v. List*, 542 Pa. 141, 665 A.2d 1176 (1995), the Pennsylvania Supreme Court explained the tort concept of sudden emergency as follows:

The sudden emergency doctrine ... is available as a defense to a party who suddenly and unexpectedly finds him or herself confronted with a perilous situation which permits little or no opportunity to apprehend the situation and act accordingly. The sudden emergency doctrine is frequently employed in motor vehicle accident cases wherein a driver was confronted with a perilous situation requiring a quick response in order to avoid a collision. The rule provides generally, that an individual will not be held to the "usual degree of care" or be required to exercise his or her "best judgment" when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection

under the doctrine. The rule recognizes that a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability simply because another perhaps more prudent course of action was available. Rather, under such circumstances, a person is required to exhibit only an honest exercise of judgment. The purpose behind the rule is clear: a person confronted with a sudden and unforeseeable occurrence, because of the shortness of time in which to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence. It is important to recognize, however, that a person cannot avail himself of the protection of this doctrine if that person was himself driving carelessly or recklessly.

*Id.* 542 Pa. at 150–151, 665 A.2d at 1180.

In order to find the defendant guilty of vehicular homicide, you must be satisfied that the following four elements have been proved beyond a reasonable doubt. Element Number 1, that the defendant violated one or more of the Vehicle Code Sections I have just identified for you. Element Number 2, that under the circumstances, the defendant acted recklessly or with gross negligence by driving in a manner that violated one or more of those Vehicle Code sections. Element Number 3, that Susan Story is dead. And Element Number 4, that the defendant's violation of one or more of the Vehicle Code sections was a direct cause of her death.

*Id.* at 653–654. The trial court then proceeded to define the five sections of the Vehicle Code. *Id.* at 656–660. As part of its description of the fifth and final section, regarding driving at a safe speed,[5] the trial court included the following:

Now, as I've just instructed you, ladies and gentlemen, this section of the Vehicle Code includes what the law in Pennsylvania recognizes as the assured clear distance ahead rule.

That is that a driver must not operate his vehicle at a speed greater than will permit him to bring his vehicle to a stop within the assured clear distance ahead.

That is, a driver must keep his vehicle under such control that he can always stop within the distance that he can clearly see, a distance that will vary according to the attending circumstances.

The assured clear distance ahead rule applies to objects which are static or essentially static and it applies to vehicles moving in the same direction.

Now, even though that statute includes the assured clear distance ahead rule, Pennsylvania also has what is know as the sudden emergency rule, which if applicable, negates the application of the assured clear distance ahead rule.

This means that you must first decide if the defendant was confronted by a sudden emergency. If you find that he was so confronted, then he was excused from maintaining an assured clear distance.

A sudden emergency may be a sudden blocking of the road, a sudden swerving of a vehicle or any occurrence requiring some form of an immediate evasive action.

To invoke the sudden emergency doctrine, the defendant must establish a sudden emergency by a preponderance of the evidence and it must appear that he was driving with due regard for the condition of the highway and traffic conditions.

Under the sudden emergency doctrine, a clear emergency must arise suddenly from inside the range of the assured clear distance. There must be a sudden and unexpected interjection of an instrumentality within that range such that there was no opportunity to

---

5. 75 Pa.C.S.A. § 3361, pertaining to driving at a safe speed, states as follows:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361.

assess the danger and to respond appropriately.

The sudden emergency doctrine applies only to moving instrumentalities suddenly and unexpected thrust into a driver's path of travel. The emergency must be unforeseeable to the driver and of such severity as to put a driver in instantaneous disability.

The emergency must be clear and sudden to such a degree that a reasonable man would not differ if the driver was acting under such an emergency.

If a person's own negligence creates the sudden emergency, that driver may not rely on that rule to justify his failure to stop within the assured clear distance.

So let me just recap, ladies and gentlemen. If you determine that there was a sudden emergency, and you have to make that decision, then the assured clear distance ahead rule does not apply.

On the other hand, if you determine that there was not a sudden emergency, then the defendant was held to the assured clear distance ahead.

*Id.* at 660–662.

¶ 17 When the trial court concluded the jury instructions, a sidebar discussion was held during which the following exchange occurred regarding the portion of the instructions pertaining to the sudden emergency doctrine.

THE COURT: Corrections or additions?

. . .

MR. PATTERSON [for Matroni]: Your Honor, there are two matters on the points for charge. Number 1, the proof, the burden of proof of the sudden emergency doctrine of the defendant by the preponderance of the evidence.

. . .

THE COURT: . . . You want me to tell them that it's beyond a reasonable doubt? What is the standard?

MR. PATTERSON [for the Commonwealth]: . . . Frankly, I'm not sure whether there is any standard, but I want to make sure that I have the record preserved.

THE COURT: I think if you're asking me to correct it, I think you should be telling me what you want me to instruct the jury.

MR. PATTERSON: I would say that there's no burden of proof. If they find it. In don't think it's a burden of proof.

THE COURT: They have to have a burden of proof to find anything. It's either got to be a preponderance of the evidence, clear and convincing, or beyond a reasonable doubt.

MR. PATTERSON: Well, the Commonwealth has to disprove it beyond a reasonable doubt.

THE COURT: The person asserting it has to—your objection is noted.

*Id.* at 665–666.

¶ 18 Matroni now asks us to find reversible error based on the trial court's placement of the burden of proof with regard to the sudden emergency doctrine. We find, however, that he is not entitled to relief on these grounds because it was error for the trial court to instruct the jury on the sudden emergency doctrine in the first place. Further, because this error had the potential to prejudice the Commonwealth, not Matroni, Matroni is not entitled to relief on his claim that the content of the instruction was incorrect. *Commonwealth v. Spano*, 451 Pa.Super. 226, 679 A.2d 240, 244 (1996) *(citing Commonwealth v. Blystone*, 421 Pa.Super. 167, 617 A.2d 778, 785 (1992) ("[E]ven if we found that the trial court erred in instructing the jury, we can only grant relief if the error prejudiced the appellant.")); *Kukow-*

*ski v. Kukowski*, 385 Pa.Super. 172, 560 A.2d 222, 224 (1989) ("Reversible error will be found only where the jury instruction has been shown to have been harmful or prejudicial to the complaining party, as well as erroneous.").

¶ 19 The trial court erred in instructing the jury on the sudden emergency doctrine because that doctrine, a civil concept, is not a recognized defense to which Matroni was entitled to a jury instruction. As Matroni himself acknowledges, "the trial court is under a duty to instruct the jury on the correct legal principles **applicable** to the facts presented at trial." *Commonwealth v. Cox*, 546 Pa. 515, 530, 686 A.2d 1279, 1286 (1996) (emphasis added). Here, the sudden emergency doctrine is not a legal principle applicable to the Vehicle Code charges in question.

¶ 20 Even the trial court and counsel recognized the impropriety of applying a civil principle to a criminal case, as is apparent from their confusion over the appropriate burden of proof. Their uncertainty is further illustrated by their continued discussion regarding Matroni's potential negligence in creating the sudden emergency:

> MR. PATTERSON [for Matroni]: ... that's a civil standard and we're dealing with a criminal case....
> THE COURT: What is correct?
> MR. BROWN [for the Commonwealth]: If anything, Judge, I wouldn't have an objection to you saying that the defendant's own conduct can't create it. I understand his concern is the civil aspect versus criminal.
> THE COURT: Well, it is a civil law concept. That's why the burden is always by a preponderance of the evidence. I'll correct that if you two agree on what you want me to say.
> MR. BROWN: Well, like I said, the only thing I would say is that the defendant's own conduct, you don't have to prove that his own criminal conduct created the emergency.
> THE COURT: Would you be satisfied by that? A person's own conduct creates a sudden emergency, that driver may not rely upon the rule to justify his failure to stop within the assured clear distance ahead. If you're asking me to correct it.
> MR. PATTERSON: I would say that you have to say that—I would ask the Court to say that the defendant's conduct would have to be criminal recklessness—
> MR. BROWN: That's not the standard, Judge.
> THE COURT: I'll correct it to a person's own conduct, but I won't say civil negligence. Do you want that done or leave it the way it is?
> MR. PATTERSON: I would ask that it go the way I specified just so I can preserve it.
> THE COURT: Well, the thing is, Mr. Patterson, this is a civil concept. There's no question about it.
> MR. PATTERSON: I understand that.

*Id.* 667–668.

¶ 21 Extensive research has revealed no cases wherein a defendant has been permitted to successfully employ the sudden emergency doctrine as a defense to criminal charges, and we decline to allow Matroni to do so in this case.

■ ¶ 22 Even if the sudden emergency doctrine were to be applied in this case, Matroni cannot avail himself of that defense. Matroni argues that a sudden emergency arose when the pick-up truck traveling in front of him changed lanes, revealing the slow moving tractor trailer. The sudden emergency doctrine, however, does not apply to vehicles moving in the

same direction, nor does it apply when the defendant is responsible for creating the emergency. As a panel of this Court explained in *Cunningham v. Byers*, 732 A.2d 655 (Pa.Super.1999):

> Generally a jury should not be instructed on both the assured clear distance ahead rule and the sudden emergency doctrine since the two are mutually exclusive. This is based on the rationale that the assured clear distance ahead rule applies to essentially static or static objects including vehicles moving in the same direction, while **the sudden emergency doctrine applies only to moving instrumentalities thrust into a driver's path of travel.**

*Id.*, 732 A.2d at 658 (citing *Elder v. Orluck*, 334 Pa.Super. 329, 483 A.2d 474, 482 (1984) (emphasis added)). *See also Kukowski*, 560 A.2d at 225 ("[T]he 'assured clear distance ahead' rule applies to static or essentially static objects while the 'sudden emergency' doctrine only applies to moving instrumentalities suddenly and unexpectedly thrust into a driver's path of travel.").

¶ 23 Here, the tractor trailer, a vehicle moving in the same direction as Matroni, was clearly not suddenly or unexpectedly thrust into Matroni's path of travel. Even if we were to assume that the tractor trailer decelerated quickly, sudden braking has been held not to constitute a sudden emergency. *Carpinet v. Mitchell*, 853 A.2d 366 (Pa.Super.2004). *Carpinet* resulted from a rear end collision caused by the sudden breaking of a vehicle. The plaintiff, traveling behind that vehicle, successfully stopped, but the defendant, traveling behind the plaintiff, could not, and collided with the plaintiff's car. *Id.*, 853 A.2d at 369. The jury returned a verdict in favor of the plaintiff, and the defendant argued on appeal that it was error for the trial court to fail to give a sudden emer-

gency instruction. *Id.*, 853 A.2d at 368–370. The Court found, however, that "sudden braking on a highway must be deemed a foreseeable occurrence. Indeed, any sudden or unexpected peril in this matter was created in part by [the defendant's] own actions in apparently following too closely behind [the plaintiff]...." *Id.*, 853 A.2d at 374.

¶ 24 Thus, the sudden emergency doctrine is not applicable to the circumstances at hand, since the tractor trailer was moving in the same direction as Matroni's vehicle. Additionally, Matroni cannot avail himself of the doctrine because he himself was the cause of the sudden emergency. As we noted above, research revealed no criminal cases wherein Pennsylvania courts permitted a defendant to successfully assert the sudden emergency doctrine as a defense to criminal negligence. A few cases exist, however, wherein a defendant unsuccessfully attempted to benefit from application of the doctrine.

¶ 25 In *Commonwealth v. Morris*, 205 Pa.Super. 105, 207 A.2d 921 (1965), a panel of this Court refused to permit an appellant to escape criminal responsibility for the results of a sudden emergency of his own making. *Id.* at 924. The defendant in was charged with involuntary manslaughter as the result of a fatal three car accident. *Id.* at 922. Several witnesses for the Commonwealth, one of whom narrowly avoided the collision, testified that the defendant attempted to perform an illegal u-turn (from the right hand east bound lane into the west bound lane) on the Pennsylvania Turn Pike. *Id.* 207 A.2d at 923. A fatal three car collision occurred. *Id.* The defendant denied stopping or attempting a u-turn. *Id.* His passenger testified that the collision was caused by one of the other vehicles involved. *Id.* On appeal, the defendant unsuccessfully argued that the evidence was

insufficient to support his conviction for involuntary manslaughter. *Id.* The Court disagreed, finding that "Appellant may not thus escape responsibility for the result of the sudden emergency created by his own criminal negligence." *Id.* at 924 (emphasis added). Similarly, in *Commonwealth v. Morgan,* 197 Pa.Super. 486, 179 A.2d 681 (1962), a panel of this Court held that the sudden emergency rule cannot be invoked by one whose wrongful conduct created the emergency or gave rise to the situation of peril. *Id.,* 179 A.2d at 682.

¶ 26 Even in the civil context, courts have held that a person cannot avail themselves of the sudden emergency doctrine if the emergency was of their own making. *Lockhart,* 542 Pa. at 150–151, 665 A.2d at 1180; *Kennedy v. Balogh,* 397 Pa. 638, 644–645, 156 A.2d 847, 851 (1959); *Cannon v. Tabor,* 434 Pa.Super. 232, 642 A.2d 1108, 1113 (1994) *(citing McKee v. Evans,* 380 Pa.Super. 120, 551 A.2d 260, 273 (1988) ("One invoking the defense of sudden emergency cannot be responsible for creating that very peril. . . . Thus, one driving carelessly or recklessly cannot avail himself of the rule's protection, since, normally, the peril would not have arisen in the first instance.")); *Henry v. Trabosh,* 224 Pa.Super. 372, 307 A.2d 446, 448 (1973) ("The sudden emergency rule will not apply if the emergency arises through the prior negligence of the person in whose behalf the court invokes its protection. The rule does not excuse the fault of one who by his own antecedent negligence . . . or conduct has brought about or created the emergency.").

¶ 27 Here, Matroni was convicted of failing to drive at a safe speed, reckless driving, following too closely, and violating Vehicle Code provision pertaining to driving on roadways laned for traffic and overtaking a vehicle on the right.[6] These actions more than support a conclusion that even if the sudden emergency doctrine were to apply, which we find it does not, Matroni's conduct created the emergency situation and would prevent him from invoking the doctrine.

¶ 28 Finally, because Matroni was convicted of four summary offenses apart from the offense relevant to the instruction in question (none of which he challenges), his conviction for homicide by vehicle was amply supported by those violations, completely untainted by any error associated with the sudden emergency instruction. For the foregoing reasons, Matroni is not entitled to relief on these grounds.

■ ¶ 29 Matroni's final contention challenges his sentence. In doing so, Matroni acknowledges that his sentence was within the standard range of the sentencing guidelines. Appellant's brief at 26. Thus his challenge is to the discretionary aspects of his sentence.

> A defendant cannot appeal as of right from the discretionary aspects of a sentence. 42 Pa.C.S. § 9781(b). In order to appeal the discretionary aspects of a sentence, the defendant must set forth in his brief a statement of the reasons relied upon for allowance of appeal, and such statement must precede the defendant's argument on the merits. Pa. R.A.P. 2119(f). Further, the defendant's statement must raise a substantial question as to whether the court properly considered the sentencing guidelines. *Commonwealth v. Koehler, Jr.,* 558 Pa. 334, 737 A.2d 225, 244 (1999).

*Commonwealth v. Begley,* 566 Pa. 239, 301 780 A.2d 605, 642 (2001).

---

**6.** As we noted above, Matroni does not contest the sufficiency of the evidence to support these convictions.

¶ 30 Here, Matroni has included in his appellate brief a statement of reasons relied upon for allowance of appeal, pursuant to Rule 2119(f). Thus, he has complied with the procedural requirements for a challenge to the discretionary aspects of sentence. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). Accordingly, we may proceed to a determination of whether Matroni's challenge raises a substantial question.

■ ¶ 31 Matroni first argues that the imposition of an eight to 23 month sentence was a manifest abuse of discretion because he had no prior criminal record, had a stable family life, and a good work history. Appellant's brief at 22, 25–26. This is essentially a claim that the trial court failed to properly consider mitigating factors when fashioning Matroni's sentence. "[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Bullock*, 868 A.2d 516, 529 (Pa.Super.2005) *(citing Commonwealth v. Wellor*, 731 A.2d 152 (Pa.Super.1999); *Commonwealth v. Bershad*, 693 A.2d 1303 (Pa.Super.1997); *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 653 A.2d 706 (1995), *appeal denied*, 541 Pa. 625, 661 A.2d 873 (Pa.1995)).

■ ¶ 32 Matroni additionally asserts that in fashioning his sentence, the lower court impermissibly considered his alleged lack of remorse. While claims that a sentence is based on the consideration of an impermissible factor have been found to constitute substantial questions, the consideration of a defendant's level of remorse has not been found to be an impermissible

factor. *Begley*, 566 Pa. at 301, 780 A.2d at 642–643; *Commonwealth v. Fullin*, 892 A.2d 843, 849–850 (Pa.Super.2006); *Commonwealth v. Griffin*, 804 A.2d 1, 11 (Pa.Super.2002); *Commonwealth v. Jones*, 433 Pa.Super. 266, 640 A.2d 914, 917 (1994); *Commonwealth v. Minott*, 395 Pa.Super. 552, 577 A.2d 928, (1990). In fact, it is clearly within the trial court's sound discretion to assess a defendant's remorse, or lack thereof. *Id.; Commonwealth v. Druce*, 796 A.2d 321, 337 (Pa.Super.2002) *(citing Commonwealth v. Eicher*, 413 Pa.Super. 235, 605 A.2d 337, 354 (1992), *appeal denied*, 533 Pa. 598, 617 A.2d 1272 (1992) ("The sentencing court is in the best position to judge the 'defendant's character, [and his] displays of remorse, defiance or indifference.' ")).

■ ¶ 33 Here, the trial court explained its sentencing rationale as follows:

In imposing [Matroni's] sentence, I took into account the Defendant's age, character, education, work history, lack of prior criminal history and the many letters I received in his behalf. In addition, I considered the comments made by the Defendant, by his attorney and by the several individuals who spoke in his behalf at the sentencing. I also considered the guidelines of the Sentencing Code, the guidelines established by the Commission on Sentencing, the trial testimony, the Defendant's family history, the comments made by the Commonwealth at the sentencing (including a letter from the victim's family), the presentence investigation report in its entirety and the penalty authorized by the Legislature.[7]   Finally, I noted that even though the Defendant expressed

---

**7.** "Where a presentence report exists, and the sentence is within the sentencing guideline ranges, the appellate court will presume the sentencing court was aware of any and all relevant information contained in the report

and weighed those considerations along with all mitigating factors." *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa.Super.1997) (citation omitted).

his sympathy for the victim's family, I did not perceive his remorse being sincere.

Pa.R.A.P. 1925(a) Opinion at 4.

¶ 34 Following careful review, we find that Matroni has shown no error on the part of the trial court in fashioning his sentence.

¶ 35 For the foregoing reasons, we affirm Matroni's conviction and judgment of sentence.

¶ 36 Affirmed.

¶ 37 BOWES, J., FILES A CONCURRING AND DISSENTING OPINION.

CONCURRING AND DISSENTING OPINION BY BOWES, J.:

¶ 1 I agree that the evidence was sufficient to sustain Appellant's conviction but respectfully dissent from the majority's refusal to grant Appellant a new trial based upon the trial court's erroneous instruction that Appellant had the burden of proof as to the existence of a sudden emergency.

¶ 2 The majority first suggests that since the sudden emergency doctrine is a civil concept, it should not be permitted as a defense in this criminal action. I disagree. Initially, it is important to keep in mind that a criminal defendant has a constitutional right to present a defense to criminal charges. The United States Supreme Court has consistently admonished that the "Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote[.]" *Holmes v. South Carolina,* 547 U.S. 319, ——, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006); *see also Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). The Court stated in *Chambers v. Mississippi,*

410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (emphasis added):

The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. Mr. Justice Black, writing for the Court in *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948), identified these rights as among the minimum essentials of a fair trial:

"A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, **to offer testimony,** and to be represented by counsel."

*Accord Commonwealth v. Ward,* 529 Pa. 506, 605 A.2d 796, 797 (1992) ("An accused has a fundamental right to present evidence so long as the evidence is relevant and not excluded by an established evidentiary rule.").

¶ 3 Evidence of the existence of a sudden emergency certainly is not excluded by any evidentiary rule and is relevant in this prosecution for vehicular homicide because it negates the existence of negligence by the actor. It must be recalled that Appellant was charged with **negligently** causing the death of Ms. Story and specifically with homicide by vehicle, 75 Pa.C.S. § 3732(a), which states:

Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to

the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

¶ 4 To establish that the defendant committed the crime of homicide by vehicle, the Commonwealth must have proven that the defendant acted recklessly, as outlined by 18 Pa.C.S. § 302(b)(3). *Commonwealth v. Grimes,* 842 A.2d 432 (Pa.Super.2004). Section 302(b)(3) states:

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

¶ 5 The sudden emergency doctrine absolves a person of liability for negligence in causing a motor vehicle accident if while otherwise driving prudently, the person is confronted with a sudden and unexpected dangerous situation but does not have the opportunity to apprehend and avoid that situation. *Lockhart v. List,* 542 Pa. 141, 665 A.2d 1176 (1995). It derives from the common law, *id.* at 148 n. 2, 665 A.2d at 1179 n. 2, and is employed in motor vehicle accidents when a driver is confronted with a dangerous situation requiring a quick response to avoid a collision. It therefore negates the existence of negligence.

¶ 6 As noted above, 75 Pa.C.S. § 3732(a), vehicular homicide, has an intent element which mandates that a person act "recklessly or with gross negligence." Thus, to establish that the defendant committed the

crime of homicide by vehicle, the Commonwealth must have proven that the defendant acted recklessly, as outlined by 18 Pa.C.S. § 302(b)(3). *Grimes, supra.* Pursuant to section 302(b)(3), a defendant acts recklessly if he "consciously disregards" a risk, and that disregard must involve a gross deviation from the standard of conduct that a reasonable person would observe in the defendant's situation.

¶ 7 The sudden emergency doctrine applies to establish that a person was not negligent, and thus, acted as a reasonable person would have acted in the defendant's situation. The existence of a sudden emergency, as it does in the civil setting, would disprove in this criminal setting that the defendant disregarded a risk because the defendant would not have been aware of the risk until it was too late to act reasonably under the circumstances. Similarly, if a defendant was faced with a sudden emergency, leaving him insufficient time to act in the most prudent manner, that fact would prove that he did not act with the criminal intent set forth in 18 Pa.C.S. § 302(b)(3) because he did not deviate from the standard of conduct that a reasonable person would observe in the defendant's situation.

¶ 8 The majority's conclusion that the trial court incorrectly allowed Appellant to present the sudden emergency doctrine because it was a "civil concept" is inconsistent with *Commonwealth v. Uhrinek,* 518 Pa. 532, 544 A.2d 947 (1988). In that case, the Supreme Court awarded the defendant a new trial after he was convicted of homicide by vehicle because the trial court excluded evidence of the victim's intoxication, and the defendant was prepared to establish that the intoxication contributed to the accident. Thus, the Supreme Court ruled that evidence of a victim's "contributory negligence," which is unquestionably a "civil concept," even though contributory

negligence is not a "defense," can be presented to the jury if that contributory negligence was the cause of the death. The Court in *Uhrinek* stated that in order to sustain a conviction for homicide by vehicle, the Commonwealth must prove beyond a reasonable doubt that the defendant's conduct is a direct and substantial cause of the death and that the defendant is entitled to present evidence that the victim's actions were the actual cause of the injury.

¶ 9 We applied *Uhrinek* in *Commonwealth v. Hutchinson*, 423 Pa.Super. 571, 621 A.2d 681 (1993). In *Hutchinson*, the defendant was convicted of homicide by vehicle, driving under the influence, and driving at an unsafe speed. The victim was driving a tractor at the time of the nighttime accident, and there was evidence that tractor did not have proper lights on the rear and that its improper lighting contributed to the accident. We concluded that trial counsel was ineffective for failing to argue that the decedent's failure to place proper lighting on the tractor was the cause of the accident. We also held that the jury should have been instructed that the jury must consider whether the decedent's conduct, as opposed to that of the defendant, was the cause of the accident and that in order to be convicted, the defendant's conduct must be the direct cause of the death.

¶ 10 In the present case, the sudden emergency doctrine would negate the intent element of vehicular homicide by establishing that Appellant was not acting recklessly when he struck the truck and caused it to move into oncoming traffic because he was faced with a sudden, unexpected emergency leaving little or no time to react, and he did not consciously disregard a risk of harm to others. He was constitutionally entitled to present this evidence and obtain a related instruction that the existence of a sudden emergency can negate the existence of recklessness. *Commonwealth v. Weiskerger*, 520 Pa. 305, 312–313, 554 A.2d 10, 14 (1989) (citing *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)) ("A defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor.").

¶ 11 Furthermore, contrary to the majority's position, Appellant's testimony regarding how the accident occurred, even though refuted by other witnesses, was sufficient to establish the existence of a sudden emergency and warranted an appropriate instruction that the existence of a sudden emergency can demonstrate that a person was not negligent under the circumstances. It is beyond question in this Commonwealth that a defendant's testimony, standing alone, can provide the necessary factual support to require jury instructions on a given defense. *Commonwealth v. Hamilton*, 766 A.2d 874 (Pa.Super.2001). Our Supreme Court has held that a defendant's testimony that he was not at the scene of the crime, even if contradicted by other compelling testimony, is sufficient to require an alibi instruction and an instruction that even if the jurors do not believe the defendant's testimony, they should acquit if the defendant's alibi evidence raises a reasonable doubt that the defendant was present at the scene of the crime. *See Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597, 602 (1980). Indeed, in *Commonwealth v. Torres*, 564 Pa. 219, 766 A.2d 342 (2001), the Supreme Court reversed a conviction for simple assault because the defendant's testimony, by itself, established the existence of self-defense, and the Commonwealth had failed to adduce any evidence to refute the existence of self-defense.

¶ 12 In my view, Appellant's testimony was sufficient to establish the existence of a sudden emergency. Consistently with a statement given to police, Appellant testified at trial that he was traveling within or slightly above the speed limit in the left-hand southbound lane and was not tailgating the pickup truck when he passed Mr. Ortiz the second time on Fruitville Pike. He also stated that the pickup truck suddenly swerved into the right lane to avoid hitting the tractor-trailer and that he did not see the tractor-trailer until this point. Appellant told the jury that he swerved into the right lane to avoid the tractor-trailer, hit the curb, and then struck the tractor-trailer.

¶ 13 Specifically, Appellant testified as follows. He left home before daylight at approximately 6:10 a.m. to arrive for work at 7:00 a.m. He had plenty of time to arrive at work, stopped at the Fruitville Bagel Shop, and proceeded south on Fruitville Pike in the left lane, stopping next to Mr. Ortiz, who was in the right hand lane, at a red light at the intersection of Red Rose Commons. It was not possible to view the intersection with Dillerville Road from that vantage point due to a ridge in the roadway.

¶ 14 When the light turned green, both Appellant and Mr. Ortiz accelerated, but Mr. Ortiz pulled ahead. A pickup truck passed Appellant on the right and then pulled in front of Appellant. The three vehicles were traveling between forty to forty-five miles per hour, and Appellant was not tailgating the pickup truck. As the three vehicles approached the intersection with Dillerville Road, Appellant saw Mr. Ortiz slow and thought that Mr. Ortiz was turning right. Appellant could not see in front of the pickup truck. Suddenly, the pickup truck moved into the right lane, exposing the rear of the slow moving tractor-trailer. Appellant explained that "all of a sudden it was just like somebody pulling a curtain, bango. Here is this brown truck just sitting there. I estimate his speed at 10 miles an hour. And I had, I felt at that time, one to two seconds to decide what I should do, could do. . . ." N.T. Trial, 3/4/05, at 454. Appellant stressed that when he first observed the brown tractor-trailer, he had "a second or two to react" to avoid striking it. *Id.* at 455. In an evasive move, Appellant swerved "into the right lane to avoid hitting the back end of the [tractor-trailer]." *Id.* Appellant stated that it was not his intention to pass that truck, but he merely tried to avoid hitting it. *Id.* After proceeding into the right lane, Appellant oversteered, and his car struck the curb. Appellant lost control of his car and "swung back to the left," striking the tractor-trailer.

¶ 15 Appellant's testimony, even though contradicted by other evidence, did support the existence of a sudden emergency. Appellant stated that he **was neither speeding nor tailgating** and could not see the tractor-trailer until the pickup suddenly swerved. He explained that he could not see the tractor-trailer **due to the lighting at the time of the accident, the sight lines on the road, and the interference of the pickup truck.** Once the pickup truck veered to the right, Appellant stated that he did not have sufficient time to react to avoid the accident. According to Appellant, he was driving prudently but that due to various conditions, he did not see the truck until it was too late.

¶ 16 A standard instruction that the Commonwealth has the burden of proof beyond a reasonable doubt as to recklessness, together with an instruction on the sudden emergency doctrine, would have correctly conveyed the law. However, the trial court improperly instructed the jury that Appellant had the burden of proving

the existence of a sudden emergency by a preponderance of the evidence. Specifically, the court stated as follows: "To invoke the sudden emergency doctrine, the defendant must establish a sudden emergency by a preponderance of the evidence and it must appear that he was driving with due regard for the condition of the highway and traffic conditions." N.T. Trial, 3/7/05, at 661. Appellant lodged a specific objection to the trial court's placement of the burden of proof on him, arguing that the Commonwealth needed to disprove the existence of a sudden emergency beyond a reasonable doubt. *Id.* at 665–67. This instruction was critical constitutional error.

¶ 17 Under the United States Constitution, the prosecution in a criminal matter has the unshifting burden of proof beyond a reasonable doubt as to all elements of a crime, including the intent element of an offense. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The sudden emergency doctrine negates the intent element of vehicular homicide, one of the elements of the offense outlined by our legislature. When a defense operates to negate the *mens rea* element of a crime, the Commonwealth has the burden of disproving such a defense beyond a reasonable doubt. *Hamilton, supra; Commonwealth v. Namack*, 444 Pa.Super. 9, 663 A.2d 191, 194 (1995). As we stated in *Hamilton, supra* at 881 (quoting *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 1000–1001 (1992) (emphases omitted)):

> In any criminal prosecution, the Commonwealth has the unshifting burden to prove beyond a reasonable doubt all elements of the crime charged. The burden is neither increased nor diminished when a defendant attempts to disprove an element of the crime by introducing an affirmative defense. Accordingly, when charging a jury, a trial judge must communicate to the jury that when evi-

dence of an affirmative defense is offered, the Commonwealth still has the burden to prove each element of the crime charged beyond a reasonable doubt. Thus, the burden never shifts to the defendant. Moreover, the trial judge must state that the jury's determination that the affirmative defense has not been established is essential to finding that the Commonwealth has met its burden.

*Accord Pounds, supra* (because the defendant does not have the burden of proof in a criminal case, to infer guilt based upon the failure to establish a defense violates presumption of innocence and the prosecution's burden of proving offense beyond a reasonable doubt).

¶ 18 In this case, the trial court shifted the burden of proof to Appellant to establish that defense by a preponderance of the evidence. The instruction at issue clearly and unequivocally shifted that burden to Appellant, it was improper, and it prejudiced him. While the Commonwealth counters that the instruction was not prejudicial because it was given in connection with the instructions on the violations of the Motor Vehicle Code, I cannot agree. The jury was improperly told that Appellant bore the burden of proof in this criminal action. Simply put, this instruction's placement did not obviate its unconstitutional dimension. I would grant Appellant a new trial due to this erroneous jury instruction and respectfully dissent.