J-S22003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PETER JOSEPH KOCHER | : | |
| | : | |
| Appellant | : | No. 1043 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 30, 2019
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000090-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PETER JOSEPH KOCHER | : | |
| | : | |
| Appellant | : | No. 1548 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 30, 2019
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000090-2018

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 24, 2020**

Appellant, Peter Joseph Kocher, appeals from the August 30, 2019 judgment of sentence ordering him to serve an aggregate 22 to 108 months' incarceration and to pay an aggregate fine of $5,025, as well as costs, after a

_____

[*] Retired Senior Judge assigned to the Superior Court.

jury convicted Appellant of aggravated assault by vehicle while driving under the influence ("DUI"), aggravated assault by vehicle, and recklessly endangering another person ("REAP").[1]  We affirm.

The trial court summarized the factual history as follows:

> On December 1, 2017[,] at approximately 10:00 p.m., Appellant was traveling in the [southbound] lane on Route 220 in Bradford County[, Pennsylvania,] in a pick-up truck hauling an enclosed trailer when he crossed the [centerline, drove] over a concrete barrier[,] and collided with a vehicle driven by [the victim], who was traveling in the [northbound] lane.  The [s]outhbound lane in this area is [a single] lane [that] divides with a concrete barrier into [two] lanes.  The left southbound lane is marked for [use in] taking a left[-]hand turn only at the intersection.  The right southbound lane is [marked] for [use in] continuing to travel south on Route 220.  Upon arrival by the Pennsylvania State Police, Appellant was unable to pass the field sobriety tests.  Beer bottles were found in Appellant's vehicle.  Appellant agreed to have his blood tested[,] which resulted in a [blood alcohol concentration ("BAC")] of 0.145%.  He was arrested and charged with [the aforementioned crimes.  The v]ictim was severely injured and was required to undergo surgery as a result of the accident.  During his last surgery, [the v]ictim suffered aspiration of gastric contents during the induction of anesthesia and died.

_____

[1] 75 Pa.C.S.A. §§ 3735(a) and 3732.1, and 18 Pa.C.S.A. § 2705, respectively. In a bench trial, the trial court convicted Appellant of two counts of DUI, pursuant to 75 Pa.C.S.A. §§ 3802(a)(1) and (b), for which no sentence or fine was imposed because the convictions merged into the aggravated assault by vehicle while DUI conviction for sentencing purposes.  The trial court also convicted Appellant of the summary offenses of driving on the right side of the roadway, driving on one way roadways, driving with disregard of traffic lane, driving on divided highways, vehicle entering or crossing roadway, and reckless driving, for which individual fines were imposed and included in the aforementioned aggregate fine.  75 Pa.C.S.A. §§ 3301(a), 3308(b), 3309(a), 3311(a), 3324, and 3736(a), respectfully.  The trial court convicted Appellant of the summary offense of disobedience to traffic-control device, for which no sentence or fine was imposed.  75 Pa.C.S.A. § 3111(a).

Trial Court Opinion, 12/5/19, at 1. As a result of the accident, Appellant was charged with one count each of aggravated assault by vehicle while DUI, REAP, and the aforementioned summary offenses, as well as two counts of DUI.

On March 26, 2018, Appellant filed an *omnibus* pretrial motion to compel discovery, to dismiss the charge of aggravated assault by vehicle while DUI, and to suppress the evidence recovered from Appellant's truck on the grounds that the Pennsylvania state troopers lacked probable cause to search the vehicle. Appellant's *Omnibus* Pretrial Motion, 3/26/18. After the victim died, the Commonwealth filed a motion to amend the charges filed against Appellant to include one count each of homicide by vehicle while DUI, homicide by vehicle, and aggravated assault by vehicle. 75 Pa.C.S.A. §§ 3735, 3732, and 3732.1, respectively; **see also** Commonwealth's Motion to Amend the Information, 3/29/18. After conducting a hearing, the trial court granted Appellant's motion to compel discovery and the Commonwealth's motion to amend the criminal complaint, but denied Appellant's motion to dismiss the charge of aggravated assault by vehicle while DUI and motion to suppress the evidence. Trial Court Order, 6/20/18.

On July 11, 2018, Appellant filed a motion to dismiss all charges on the grounds, *inter alia*, that the Commonwealth failed to preserve the victim's vehicle as material evidence. Appellant's Motion to Dismiss, 7/11/18. The trial court subsequently denied Appellant's motion to dismiss all charges. Trial Court Order, 11/8/18.

On March 21, 2019, the jury found Appellant guilty of aggravated assault by vehicle while DUI, aggravated assault by vehicle, and REAP. In a bench trial, the trial court convicted Appellant of two counts of DUI and the aforementioned summary offenses. Appellant filed a motion for a new trial arguing that the verdict was against the weight of the evidence and a motion for judgment of acquittal alleging insufficient evidence to support the convictions. Appellant's Motion for New Trial, 3/29/19; **see also** Appellant's Motion for Judgment of Acquittal, 3/29/19. On May 17, 2019, the trial court denied Appellant's motion for a new trial and his motion for judgment of acquittal.

The trial court sentenced Appellant, on May 30, 2019, to 18 to 60 months' incarceration for aggravated assault by vehicle while DUI, 3 to 24 months' incarceration for aggravated assault by vehicle, and 1 to 24 months' incarceration for REAP with sentences to run consecutively. Appellant was ordered to pay fines and costs for the aforementioned convictions, as well as fines for the summary convictions. The aggregate sentence was 22 to 108 months' incarceration, as well as $5,025 in fines plus costs. Trial Court Order, 5/30/19. On May 31, 2019, the Commonwealth filed a post-sentence motion pursuant to Pa.R.Crim.P. 721 in which the Commonwealth requested the trial court modify the sentence to impose 22 to 108 months' incarceration for aggravated assault by vehicle while DUI and run the other two sentences concurrent for an aggregate sentence of 22 to 108 months' incarceration. Commonwealth's Post-Sentence Motion under Rule 721, 5/31/19. In the

alternative, the Commonwealth requested the trial court modify Appellant's sentence to increase the minimum sentences for aggravated assault by vehicle while DUI and aggravated assault by vehicle to 24 months and 9 months, respectively, for an aggregate sentence of 34 to 108 months' incarceration. *Id.*

On June 27, 2019, Appellant filed a notice of appeal.[2] The trial court, on July 3, 2019, ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his Rule 1925(b) statement on July 17, 2019.

On August 2, 2019, in a *per curiam* order, this Court directed Appellant to show cause why the appeal should not be dismissed on the grounds that the Commonwealth's post-sentence motion remained unresolved. *Per Curiam* Order, 8/2/19. In an August 7, 2019 response, Appellant stated he was unaware of the Commonwealth's post-sentence motion until after filing his notice of appeal. On August 30, 2019, the trial court, in granting the Commonwealth's post-sentence motion, in part, and denying it, in part, modified Appellant's sentence as follows: 22 to 108 months' incarceration for aggravated assault by vehicle while DUI; 3 to 24 months' incarceration for aggravated assault by vehicle; and 1 to 24 months' incarceration for REAP with sentences to run concurrently. Trial Court Order, 8/30/19. The

_____

[2] This Court docketed Appellant's appeal at 1043 MDA 2019.

aggregate sentence imposed was 22 to 108 months' incarceration and Appellant was ordered to pay an aggregate fine of $5,025 and costs.[3] *Id.*

On September 24, 2019, this Court granted Appellant leave to file a new notice of appeal from the August 30, 2019 judgment of sentence on or before September 27, 2019.[4] *Per Curiam* Amended Order, 9/24/19. Appellant filed an amended notice of appeal on September 24, 2019.[5] On December 5, 2019, the trial court subsequently filed its Rule 1925(a) opinion.

Appellant raises the following issues for our review:

[1.] [Did t]he [trial c]ourt [err] in not dismissing the case when the Commonwealth allowed evidence to be lost and spoiled[?]

[2.] [Did t]he [trial c]ourt [err] when it denied [Appellant's m]otion for [j]udgment of acquittal for lack of sufficient evidence[?]

---

[3] On June 10, 2019, the trial court, *sua sponte*, modified Appellant's sentence to impose a $200 fine for the summary offense of reckless driving. In modifying Appellant's sentence on August 30, 2019, the trial court did not impose a fine for reckless driving.

[4] The September 24, 2019 *per curiam* order erroneously stated that the trial court imposed Appellant's judgment of sentence on August 28, 2019. The order granting the Commonwealth's post-sentence motion, in part, and modifying Appellant's sentence was dated August 28, 2019, but not entered on the docket until August 30, 2019. Appellant had 30 days from entry of the order in which to file a notice of appeal. *See* Pa.R.Crim.P. 720(A)(4) (stating, "If the Commonwealth files a timely motion to modify sentence pursuant to Rule 721, the defendant's notice of appeal shall be filed within 30 days of the entry of the order disposing of the Commonwealth's motion").

[5] This Court docketed Appellant's notice of appeal at 1548 MDA 2019. In a *per curiam* order, this Court consolidated, *sua sponte*, Appellant's appeals at 1043 MDA 2019 and 1548 MDA 2019.

[3.] [Did t]he [trial c]ourt [err] when it denied [Appellant's m]otion for [n]ew [t]rial on the issue of weight of [the] evidence[?]

Appellant's Brief at IV (for ease of disposition, we have renumbered Appellant's issues).

In his first issue, Appellant argues that the trial court erred in denying his motion to dismiss all charges on the grounds that the Commonwealth failed to preserve physical evidence, namely the victim's vehicle, in violation of his due process rights. *Id.* at 11-16.

The trial court is vested with the sound discretion to grant or deny a pretrial motion to dismiss criminal charges, and this Court reviews the trial court's decision for an abuse of discretion or error of law. *Commonwealth v. Free*, 902 A.2d 565, 567 (Pa. Super. 2006) (citation omitted).

The Due Process Clause of the Fourteenth Amendment of the United States Constitution

> requires defendants be provided access to certain kinds of evidence prior to trial, so they may "be afforded a meaningful opportunity to present a complete defense." This guarantee of access to evidence requires the prosecution to turn over, if requested, any evidence [that] is exculpatory and material to guilt or punishment, *see Brady v. Maryland*, 373 U.S. 83[] (1963), and to turn over exculpatory evidence [that] might raise a reasonable doubt about a defendant's guilt, even if the defense fails to request it, *see United States v. Agurs*, 427 U.S. 97[] (1976). If a defendant asserts a *Brady* or *Agurs* violation, he is not required to show bad faith.
>
> There is another category of constitutionally guaranteed access to evidence, which involves evidence that is not materially exculpatory, but is potentially useful, that is destroyed by the [Commonwealth] before the defense has an opportunity to examine it. When the [Commonwealth] fails to preserve evidence

that is "potentially useful," there is no federal due process violation "unless a criminal defendant can show bad faith on the part of the [Commonwealth]." Potentially useful evidence is that of which "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." In evaluating a claim that the Commonwealth's failure to preserve evidence violated a criminal defendant's federal due process rights, a [trial] court must first determine whether the missing evidence is materially exculpatory or potentially useful.

*Commonwealth v. Ward*, 188 A.3d 1301, 1308-1309 (Pa. Super. 2018) (citations and original brackets omitted), *appeal denied*, 199 A.3d 341 (Pa. 2018). "Exculpatory evidence is evidence [that] extrinsically tends to establish a defendant's innocence of the crimes charged." *Ward*, 188 A.3d at 1309 (citation and original quotation marks omitted). "A claim that a defendant was denied access to exculpatory evidence must be supported; it cannot be based on a mere assertion." *Id.* (citation and original quotation marks omitted). "Evidence that possibly could have been exculpatory had it been available to be tested is potentially useful evidence, not exculpatory evidence." *Id.* (citation omitted). Appellant must establish that the Commonwealth acted in bad faith in failing to preserve potentially useful evidence. *Id.*

Here, Appellant argues that the Commonwealth failed to preserve the victim's vehicle, which he asserts was exculpatory evidence, in violation of his due process rights under *Brady* and *Agurs*. Appellant's Brief at 13. Appellant contends the Commonwealth "knew or should have known of the importance" and materiality of the victim's vehicle and "had the duty to preserve [the

victim's vehicle] for the defense because it was reasonable to foresee the significance this evidence most likely had on the entire case." *Id.* at 15. Appellant avers that he was not required to establish the Commonwealth's bad faith, but even if it were required, the Commonwealth acted in bad faith because it "made no effort to assist in finding or retrieving [the victim's vehicle] and allowed it to be destroyed." *Id.* at 16.

After conducting a hearing on Appellant's motion to dismiss all charges for failure by the Commonwealth to preserve the victim's vehicle, the trial court determined that the victim's vehicle was only potentially useful evidence because any benefit Appellant could derive from evaluating the victim's vehicle was purely hypothetical. Trial Court Order, 11/8/18. The trial court explained,

> The subject accident occurred on December 1, 2017. Appellant was arrested on December 2, 2017. Appellant retained a reconstruction expert on []March 15, 2018[.] The reconstruction expert examined the scene [and] Appellant's truck on April 4, 2018[,] and examined [] Appellant's trailer [two] weeks later. On May 22, 2018, the reconstruction expert notified [Appellant's] counsel that he could not locate [the] victim's [vehicle] that was involved in the accident and that examination of it was required in order to "make a proper determination as to the principal direction of force and in order to complete a comprehensive speed analysis." [The r]econstruction expert also reviewed the Pennsylvania State Police crash report. [Appellant's] counsel then authored a letter to the Commonwealth on June 5, 2018[,] requesting assistance in obtaining information as to where the [victim's vehicle was] located. It had been at a garage, but was no longer there. It was [discovered] that the []victim's insurance company removed the [victim's vehicle]. Appellant was unable to obtain cooperation from the insurance company as to [the] location of [the victim's vehicle]. [Appellant averred] that the [victim's vehicle was] necessary for inspection [in order] to argue[, at trial,] that the accident and injuries were not the direct

> fault of []Appellant and also that another reason[,] other than alcohol[,] caused the accident.
>
> [T]he evidence sought by Appellant was readily available to him while it was at the garage. He did not request the Commonwealth['s] assistance until [six] months after the arrest [and after] the victim's vehicle was taken by the insurance company. There was no evidence of bad faith presented on the part of the Commonwealth. Any benefit to Appellant by preserving the [victim's vehicle] is purely hypothetical[ and, thus,] does not violate due process.

Trial Court Opinion, 12/5/19, at 2-4 (record citation omitted).

A review of the record supports the trial court's determination that the victim's vehicle was potentially useful evidence and not exculpatory evidence. Appellant's accident reconstruction expert testified that based upon his evaluation of Appellant's truck and the attached trailer, the trailer did not have a functioning brake system. N.T., 9/5/18, at 18-20. The reconstruction expert identified this as a possible contributory factor in the cause of the accident. *Id.* at 34. The reconstruction expert opined that the trailer's inability to stop when Appellant applied his truck brakes seconds before the accident, and the resulting impact of the trailer on the rear of Appellant's truck, may have caused Appellant's truck to cross the median of the roadway and collide with the victim's vehicle. *Id.* at 18 and 27. An alternate theory of causation suggested that Appellant "just turned [his truck] into the opposing lane" and collided with the victim's vehicle. *Id.* The reconstruction expert also stated that he wanted to examine the victim's vehicle in order to calculate its rate of speed to determine if that speed was a contributing factor in the cause of the accident. *Id.* at 14-15. Based upon our review of the

record, we concur with the trial court that any alleged exculpatory benefit Appellant may have derived from examination of the victim's vehicle was hypothetical and, therefore, the victim's vehicle was potentially useful evidence, not exculpatory evidence.

Thus, Appellant was required to demonstrate bad faith on the part of the Commonwealth in failing to preserve the potentially useful evidence. We concur with the trial court that the record is devoid of evidence demonstrating that the Commonwealth acted in bad faith in failing to preserve the victim's vehicle. Appellant waited until March 15, 2018, more than three months after the accident and his subsequent arrest, to retain an accident reconstruction expert. On April 4, 2018, the reconstruction expert was able to visit the garage where the victim's vehicle was believed to have been stored. After discovering that the victim's vehicle was not available for evaluation, the reconstruction export attempted to locate the victim's vehicle, but was unsuccessful. The reconstruction expert notified Appellant, in a May 22, 2018 letter, that he was unable to author an accident reconstruction report because he could not physically examine the victim's vehicle. Appellant's counsel contacted the district attorney on June 5, 2018, requesting assistance in locating the victim's vehicle and stating, "I don't understand why the [victim's vehicle] was not held by your office after the [Pennsylvania] State Police finished their investigation or at least have my office notified that the [victim's vehicle] was not going to be held for our investigation." Appellant, however, failed to present evidence that he asked the Commonwealth to retain the

victim's vehicle after the Pennsylvania State Police completed their investigation so Appellant could conduct his own accident reconstruction investigation. Appellant also failed to demonstrate that the Commonwealth disposed of the victim's vehicle while aware that Appellant intended to conduct his own investigation. We find no merit to Appellant's contentions that the Commonwealth was obligated to notify him that it would not retain the victim's vehicle once the Pennsylvania State Police completed their investigation or that the Commonwealth's alleged failure to assist in locating the victim's vehicle several months after the accident amounted to an act of bad faith. *Commonwealth v. Natividad*, 938 A.2d 310, 331 n.15 (Pa. 2007) (holding, "[i]t is well-settled that the Commonwealth is not obligated to provide evidence that is readily obtainable by the defendant"); *see also Commonwealth v. Williams*, 154 A.3d 336, 341 (Pa. Super. 2017) (holding, police officer did not act in bad faith when he inadvertently erased potentially useful video evidence); *Commonwealth v. Snyder*, 963 A.2d 396, 401 (Pa. 2009) (noting, the Commonwealth's "duty to preserve evidence is triggered only where the evidence has clear exculpatory value").

Based upon the record before us, we find no abuse of discretion or error of law in the trial court's denial of Appellant's motion to dismiss all criminal

charges on the grounds the Commonwealth failed to preserve the potentially useful evidence. Consequently, Appellant's issue is without merit.[6]

Appellant's second issue raises a claim that the trial court erred in denying his motion for judgment of acquittal on the grounds that the evidence was insufficient to support the convictions of aggravated assault by vehicle and REAP. Appellant's Brief at 22-26.

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. **Commonwealth v. Packer**, 146 A.3d 1281, 1285 (Pa. Super. 2016) (citation omitted), *aff'd*, 168 A.3d 161 (Pa. 2017). In addressing a sufficiency claim, our standard of review and scope of review are well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be established by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

---

[6] To the extent Appellant argues the trial court erred in failing to exclude the evidence from the Commonwealth's examination, **see** Appellant's Brief at 16, we find this issue moot. Moreover, Appellant waived this issue for failure to raise it in his Rule 1925(b) statement. **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding, "[a]ny issues not raised in a 1925(b) statement will be deemed waived").

- 13 -

may sustain its burden of proving every element of a crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [fact-finder,] while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Packer*, 146 A.3d at 1285 (citation omitted).

Pursuant to Section 3732.1 of the Pennsylvania Vehicle Code, a person who

recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3732.1. A person is guilty of REAP when the person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

"The concept of gross negligence is encompassed within the concept of recklessness as set forth in Section 302(b)(3) of the Crimes Code." *Commonwealth v. Matroni*, 923 A.2d 444, 448 (Pa. Super. 2007) (citation and original brackets omitted), *appeal denied*, 952 A.2d 675 (Pa. 2008). Section 302(b)(3) of the Crimes Code defines the concept of recklessness as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree

- 14 -

that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Evidence of DUI "does not create legal recklessness *per se* but must be accompanied with other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded." ***Commonwealth v. Hutchins***, 42 A.3d 302, 311 (Pa. Super. 2012), *citing* ***Commonwealth v. Mastromatteo***, 719 A.2d 1081, 1082 (Pa. Super. 1998), *appeal denied*, 56 A.3d 396 (Pa. 2012). "What is material is actual reckless driving or conduct, for any reason, for it is this conduct which creates the peril in question." ***Mastromatteo***, 719 A.2d at 1082. Proof that a driver committed a summary offense under the Vehicle Code alone does not establish the *mens rea* of recklessness. ***Commonwealth v. Karner***, 193 A.3d 986, 993 (Pa. Super. 2018).

Here, Appellant challenges the sufficiency of the evidence to support the element of recklessness necessary for a conviction of aggravated assault by vehicle and REAP. Appellant's Brief at 23. Appellant contends the Commonwealth failed to prove beyond a reasonable doubt that Appellant acted in a sufficiently reckless manner other than DUI. ***Id.*** Appellant's accident reconstruction expert theorized that because the brake system on the trailer attached to Appellant's truck was non-functioning, the trailer and the truck acted as one mass when Appellant attempted to apply the truck

- 15 -

brakes and avert the accident. *Id.* at 24. The combined mass of the trailer and the truck[7] required a greater distance to bring the truck and trailer to rest prior to the collision with the victim's vehicle and Appellant was unable to overcome the momentum of the combined mass by applying his truck brakes. *Id.* at 24-25. Appellant asserts that the Commonwealth's evidence, namely the testimony of two Pennsylvania state troopers, was insufficient to contradict his expert's theory of causation and the laws of physics. *Id.* at 24-26.

The Commonwealth argues that Appellant's reconstruction expert's explanation of what caused the accident, which was contradicted by the troopers' testimony, "does not render the evidence insufficient because it is within the province of the fact[-]finder, the jury, to determine the weight [and credibility] to be given to the testimony[.]" Commonwealth's Brief at 19. The Commonwealth contends Appellant drove an unfamiliar route while intoxicated, failed to adhere to the traffic signs that indicated all traffic in Appellant's lane of travel must turn left at the intersection, and drove over a clearly marked concrete barrier with yellow pipe markers on it before entering

_____

[7] Appellant's truck was a Ford F150 pickup truck, which had a gross weight of 4,000 pounds, and the trailer was an eight and one-half foot by twenty foot enclosed box trailer with a gross weight of 1,700 pounds. N.T., 3/20/19 (Afternoon Session), at 9; *see also* N.T., 3/21/19 (Morning Session), at 34-35. The truck could tow a maximum of 11,100 pounds. N.T., 3/20/19 (Morning Session), at 134. Pursuant to Section 4502 of the Vehicle Code, a trailer having a gross weight of less than 3,000 pounds is not required to be equipped with its own braking system. 75 Pa.C.S.A. § 4502(b); *see also* N.T., 3/21/19 (Morning Session), at 33.

the opposing lane of traffic and colliding with the victim's vehicle. **Id.** at 20-21. The evidence sufficiently demonstrates, the Commonwealth submits, that Appellant was driving at approximately 60 miles per hour ("MPH") within two seconds of the accident, and he did not engage his brakes until one second prior to the collision with the victim's vehicle. **Id.** at 20.

In denying Appellant's motion for judgment of acquittal and finding sufficient evidence to establish the element of recklessness, the trial court stated,

> Appellant's argument hinges on whether or not the Commonwealth proved beyond a reasonable doubt the gross negligence or recklessness required for [a]ggravated [a]ssault by vehicle and [REAP]. Here, the jury found[,] and properly so, that gross negligence existed. As stated above, Appellant crossed not only [the centerline], but a concrete barrier while being in the incorrect lane (Appellant told officers he was continuing to travel south on Route 220) and collided into an oncoming vehicle. Appellant['s] argument simply is that the jury should have believed his expert. The jury obviously rejected the expert's opinion that the brakes on the trailer failed causing the truck to jack[-]knife. The jury obviously believed that [Appellant] was grossly negligent in being in the incorrect lane and then further crossing a concrete barrier into oncoming traffic. Such behavior does rise to the level of gross negligence.

Trial Court Opinion, 12/5/19, at 6.

For ease of understanding, a portion of Commonwealth Exhibit 32, which depicts the section of the roadway where the accident occurred, is reproduced as follows:



Commonwealth Exhibit 32 (depicted so the top of the exhibit image is North and the bottom South).

The record demonstrates that Appellant was driving his truck southbound on US 220 in a lane of traffic designated for a left turn only. N.T., 3/19/19 (Morning Session), at 51. Although two signs, posted prior to the intersection, identified the lane as a left-turn-only lane[8], Appellant believed

_____

[8] In addition to the two signs, the roadway had painted arrows on it designating the lane for left turn only, as depicted in Commonwealth Exhibit 32, *supra*. **See** Commonwealth Exhibit 32, 58, 59, and 60.

his lane of travel continued southbound, or straight-ahead. N.T., 3/20/19 (Morning Session), at 7 and 9; *see also* Commonwealth Exhibits 53 and 56. Shortly before Appellant approached the portion of the roadway where he was required to make a left turn, Appellant hit a yellow pole marker on the concrete median with his truck, crossed a concrete median separating Appellant's lane of traffic from the opposing lane of traffic, and collided with the victim's vehicle. N.T., 3/20/19 (Morning Session), at 24-29; *see also* Commonwealth Exhibit 3. After the accident, Appellant did not recall hitting the pole marker or crossing the concrete median, and repeatedly asked the Pennsylvania state troopers how his truck drove into the opposing lane of traffic. *Id.* at 5-29 and 31.

At 1.5 seconds before impact with the victim's vehicle, Appellant's truck, as it approached the left-turn-only intersection, was traveling 59.3 MPH.[9] N.T., 3/20/19 (Morning Session), at 121; *see also* Commonwealth Exhibit 10. The anti-lock braking system ("ABS") on Appellant's truck engaged at 1.5 seconds before impact, indicating that Appellant attempted to stop his truck quickly. Commonwealth Exhibit 10; *see also* N.T., 3/20/19 (Morning Session), at 118-119; N.T., 3/21/19 (Morning Session), at 79-81. Prior to engaging the ABS 1.5 seconds before impact, Appellant did not apply the

---

[9] The US 220 roadway is zoned for a maximum speed of 55 MPH. Commonwealth Exhibit 9. Although Appellant's speed was only 4.3 MPH greater than the maximum permitted speed 1.5 seconds before the collision, the jury could infer that Appellant's speed was grossly negligent for someone required to make a left turn.

brakes on his truck in an attempt to slow his truck, in anticipation of making the required left turn, or avoid the accident. Commonwealth Exhibit 10. A witness testified that she saw Appellant's truck "kind of drifting towards the intersection like he was [going to] turn, but [Appellant] never had a turn signal on." N.T., 3/19/19 (Morning Session), at 51.

The Pennsylvania state troopers, upon interviewing Appellant immediately after the accident, detected alcohol on Appellant's person and asked Appellant if he had been drinking. N.T., 3/20/19 (Morning Session), at 5-6, 35, and 46-47. Appellant first denied he had consumed alcohol and later admitted he had one beer several hours before the accident but could not remember where. *Id.* at 6, 8, and 34-35. Two half-consumed, open beer cans were discovered in the compartment of the driver's-side front door and within Appellant's reach when he sat in the driver's seat. *Id.* at 19-20. A state trooper administered several field sobriety tests that Appellant was unable to satisfactorily complete. *Id.* at 9-11, 13-17, and 38-46. Suspecting DUI, Appellant had his blood drawn at the hospital and test results revealed a 0.145% BAC. N.T., 3/19/19 (Afternoon Session), at 74.

Appellant's accident reconstruction expert offered the opinion that the accident was caused, in part, by Appellant losing control of his truck, as he drove through a right-angled curve on a downward graded roadway, due to the force the trailer applied to the rear of Appellant's truck because the trailer had a non-functioning brake system. N.T., 3/20/19 (Afternoon Session), at 44-48, 61-62. Appellant's reconstruction expert attributed three factors to

the cause of the accident, namely a confusing intersection, the influence of the trailer on the dynamics of Appellant's truck, and Appellant's alcohol consumption. N.T., 3/20/19 (Afternoon Session), at 49-50. Trooper Richard Rachkowski, a collision analysist and reconstruction specialist with the Pennsylvania State Police,[10] disagreed with Appellant's reconstruction expert's opinion on causation of the accident and explained,

> [i]n a right[-]angle curve, [Appellant's truck] is moving in a right direction, [his] trailer is following also in a right direction, if that trailer was to jack-knife, it would be in a counterclockwise direction. It would push straight forward and it would push the rear end of [Appellant's truck] straight, not in the opposite direction; it's a physical impossibility, it goes against the laws of physics.

N.T., 3/21/19 (Morning Session), at 58. In other words, the force of the trailer against the rear of Appellant's truck would not have pushed his truck into the opposing lane of traffic, the left-most lane of the roadway, while Appellant navigated a right-angled curve in the roadway.

Based upon the totality of the circumstances, the jury could infer, beyond a reasonable doubt, that Appellant consciously disregarded a substantial and unjustifiable risk that serious bodily harm would result when Appellant disregarded the left-turn-only designation of his lane of travel, crossed the concrete median after hitting a pole marker, and drove into the opposing lane of traffic. In navigating the right-angle curve of the downward graded roadway, Appellant failed to observe several signs indicating Appellant

_____

[10] N.T., 3/20/19 (Morning Session), at 109.

was driving in a left-turn-only lane. Prior to impacting the victim's vehicle, Appellant was driving under the influence of alcohol and at a rate greater than the speed limit when his truck hit a pole marker, crossed a concrete barrier, and entered the opposing lane of traffic. Appellant only applied his truck's brakes 1.5 seconds before impact. In considering the conflicting opinions as to the cause of the accident offered by Appellant's reconstruction expert and Trooper Rachkowski, the jury, while passing on the credibility of these witnesses and the weight to be given to their testimony, was free to believe all, part, or none of the evidence. Viewing all of the evidence and the inferences drawn from that evidence in the light most favorable to the Commonwealth, as the verdict winner, we concur with the trial court that there was sufficient evidence for the jury, as fact-finder, to find that Appellant acted recklessly or with gross negligence in the operation of his truck in violation of the summary offenses under the Vehicle Code for which Appellant was convicted. Therefore, Appellant's sufficiency claim is without merit.

Appellant's final issue raises a claim that the verdict was against the weight of the evidence to support his convictions for aggravated assault by vehicle and REAP. Appellant's Brief at 17-21.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge []had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that

the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014), *citing Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000). The trial court abuses its discretion "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Horne*, 89 A.3d at 285-286 (citation omitted). In order for an appellant to prevail on a weight of the evidence claim, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003) (citation and internal quotation marks omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003).

Here, Appellant repeats his sufficiency argument in challenging the weight of the evidence, namely that the evidence, which he alleges the Commonwealth did not dispute, demonstrated the non-functioning brake system on the trailer attached to Appellant's truck caused the trailer to push Appellant's truck into the opposing lane of traffic where it collided with the victim's vehicle. Appellant's Brief at 18. Appellant contends, "the jury gave no weight to this overwhelming evidence and found him guilty regardless of the jury instructions that advised" the jury that evidence of DUI cannot be used to establish gross negligence or a reckless act, which are elements necessary to sustain a conviction for aggravated assault by vehicle and REAP.

*Id.* at 18-19. Appellant asserts that "[a]t best, the Commonwealth presented ordinary negligence that []Appellant was driving approximately six [MPH] over the speed limit." *Id.* at 19.

The trial court, in denying Appellant's post-trial motion, found the verdict was not against the weight of the evidence and did not shock the trial court's sense of justice. The trial court reasoned,

> Appellant's argument ignores that he crossed not only [the centerline], but a concrete barrier while being in the incorrect lane (Appellant told officers he was continuing to travel south on Route 220) and collided into an oncoming vehicle. Appellant's argument simply is that the jury should have believed his expert. The jury obviously rejected the expert's opinion that the brakes on the trailer failed causing the truck to jack[-]knife. The jury obviously believed that Appellant was grossly negligent in being in the incorrect lane and then further crossing a concrete barrier into oncoming traffic. Such behavior does rise to the level of gross negligence.

Trial Court Opinion, 12/5/19, at 5.

Appellant's argument invites this Court to do nothing more than reassess the witnesses' credibility and reweigh the evidence, in particular Appellant's accident reconstruction expert's testimony, in an attempt to convince us to reach a result different than the one reached by the jury, as fact-finder. We decline Appellant's invitation. *Commonwealth v. Clay*, 64 A.3d 1049, 1056 (Pa. 2013) (holding, the role of the appellate court when addressing a weight claim is to determine if the trial court exceeded its limit of judicial discretion or invaded province of the jury). Based upon the record before us, we discern no abuse of discretion on the part of the trial court in

denying Appellant's request for a new trial based on his claim that the verdict was against the weight of the evidence. Therefore, Appellant's claim is without merit.

Judgment of sentence affirmed.

Judge Murray joins.

Judge Colins notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/24/2020