J-S42035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID A. PERLMAN | : | |
| | : | |
| Appellant | : | No. 349 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 18, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0005697-2021

BEFORE:  BOWES, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 28, 2024**

Appellant, David A. Perlman, appeals from the January 18, 2023 judgment of sentence of 18 to 36 months of incarceration entered in the Bucks County Court of Common Pleas following his jury conviction of Aggravated Assault by Vehicle while DUI, Aggravated Assault by Vehicle, Simple Assault, and two counts of Recklessly Endangering Another Person.[1]  Appellant challenges the sufficiency of the evidence, certain evidentiary rulings, and a jury instruction.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On September 4, 2020, at around 10:45 PM, Bensalem Township police responded to a two-car accident at the intersection of Trevose and Street Roads.  After arriving at the scene, Officer Christopher Pennington observed Ravshan Atoev's

_____

[1] 75 Pa.C.S. §§ 3735.1 and 3732.1, and 18 Pa.C.S. §§ 2701 and 2705, respectively.  The court also convicted Appellant of three summary offenses.

("Victim") extensively-damaged vehicle in front of a utility pole. Officer Pennington also saw another vehicle, later identified as Appellant's, across the intersection approximately 100 yards away.

Officer Pennington approached Appellant's vehicle and made contact with three people: Appellant; Jordan Cook ("Mr. Cook"), a witness who was working inside the nearby fire department; and Karen Dowling ("Ms. Dowling"), Appellant's passenger and girlfriend.

Officer Pennington observed Ms. Dowling seated outside the passenger side of the car. Ms. Dowling's left leg was in an air cast from a prior unrelated incident, but her right foot was visibly broken from the crash. Appellant was next to Ms. Dowling and Officer Pennington noticed that Appellant was unsteady on his feet, with bloodshot and glassy eyes, and slurred speech. Officer Pennington also noticed the odor of an alcoholic beverage.

Officer Pennington asked Appellant and Ms. Dowling who had been driving Appellant's vehicle; initially neither responded. When Officer Pennington asked a second time, Appellant stated that he was "not sure" who was driving the car. N.T. Trial, 10/28/22, at 81. Officer Pennington asked again, at which time Appellant and Ms. Dowling had a short, hushed conversation following which Ms. Dowling stated that she had been driving. However, once in the ambulance and away from Appellant, Officer Pennington again asked Ms. Dowling if she was the driver. Ms. Dowling shook her head to signify she was not the driver. The ambulance transported Ms. Dowling to

the hospital and her belongings were retrieved from the passenger side of Appellant's car.

Meanwhile, other officers attempted to discuss the accident with Appellant but found him argumentative and uncooperative. Appellant continued to seem unsteady on his feet, with bloodshot eyes and slurred speech. Officer Pennington asked Appellant multiple times to perform standard field sobriety tests, but Appellant refused. At that time, based on their observations of Appellant, evidence of the crash, and Ms. Dowling's response that Appellant was the driver of the vehicle, officers arrested Appellant for DUI. Appellant refused to consent to a blood test. Further investigation revealed that the Victim had had a green light and Appellant caused the accident by running a red light at a high speed.

Appellant's vehicle was significantly damaged in the crash, primarily in the front toward the passenger side, with no notable damage on the driver's side. Appellant was not injured in the crash, but Ms. Dowling was injured. In addition, the Victim sustained numerous serious injuries as a result of the crash and was admitted to the hospital where he remained for 11 days. Following the accident, the Victim was unable to work for over 14 months.

Appellant's jury trial commenced on October 27, 2022. The Commonwealth produced evidence consistent with the above facts. In addition, Officer Pennington testified at trial that he obtained the medical records of the Victim and Ms. Dowling. Appellant objected to the admission of those records on the grounds that Officer Pennington "ha[d] no basis to

testify to the contents of the records," that Officer Pennington "is not a medical doctor," and that the records were hearsay. *Id.* at 96-97. The Commonwealth confirmed that it had obtained a certification from the hospital records keeper that the records were true and accurate copies kept in the regular course of business. The trial court overruled Appellant's objection because the records satisfied the business records exception to the hearsay exclusion rule. Officer Pennington then read the contents of the medical records into the record to substantiate the nature and severity of the injuries to the Victim and Ms. Dowling.

The trial court admitted body camera footage from the scene of the accident. Relevant to the instant appeal, the footage captured, *inter alia*, an exchange between Officer Pennington and Mr. Cook in which the former asked the latter if he had seen who was driving the car. Mr. Cook indicated that Ms. Dowling got out of the passenger seat. Officer Pennington explained to Mr. Cook that Ms. Dowling had told Officer Pennington that she was driving. Mr. Cook reiterated that he had seen Ms. Dowling come out of the passenger side of the car and not the driver's side. Mr. Cook then speculated that if Ms. Dowling had been driving, she would not have come out of the passenger side "unless the door is busted over there and [Appellant] was dragging her out." Exh. C-1, 6:00. Immediately after this exchange, the footage captured Officer Pennington walking over to Appellant's vehicle and open the driver's side door, thereby demonstrating that the door was not "busted."

- 4 -

On cross-examination, Appellant's counsel attempted to question Officer Pennington about the exchange with Mr. Cook captured by the body camera footage regarding whether the driver's side door of Appellant's vehicle was "pinned." The Commonwealth objected to Appellant's counsel's efforts to determine whether Officer Pennington believed "pinned" means "unopenable" or "cannot be opened all the way." N.T. Trial, 10/28/22, at 143-44. The trial court sustained the objection.

Mr. Cook also testified for the Commonwealth. He testified that he heard the crash from inside the fire department where he worked. He further testified he saw Appellant attempting to pull Ms. Dowling from the passenger seat of his Appellant's vehicle. Mr. Cook testified that he went to aid Appellant in removing Ms. Dowling from the car.

On cross-examination, Appellant's counsel asked Mr. Cook if he had told Officer Pennington that Appellant must have dragged Ms. Dowling out of the car through the passenger side because the driver's side was "busted." Mr. Cook testified that, in an effort to reconcile what he had seen with Appellant's statement to Officer Pennington that Ms. Dowling had been driving, he merely hypothesized that "unless the door is pinned shut, that would be why he pulled her through." N.T. Trial, 10/28/22, at 46.

The trial court also admitted into evidence video surveillance footage from the intersection recorded at the time of the accident. The video, and Officer Pennington's testimony describing it, showed that the Victim's white sedan was initially sitting still at a steady red traffic light while the light

controlling the opposing traffic on Street Road turned from yellow to red. Thereafter, the traffic light controlling traffic on Trevose Road in front of the Victim's vehicle turned green and the Street Road light remained a steady red. The Victim's vehicle entered the intersection and Appellant's black sedan drove through the same intersection immediately thereafter, notwithstanding that the traffic light controlling Street Road remained red.

In his defense, Appellant presented the testimony of Vincent Damiano, Appellant's friend of 15 years. Mr. Damiano testified that, on the night of the accident, he was with Appellant and Ms. Dowling at a bar in Northeast Philadelphia. He further testified that Appellant did not seem drunk when they were together at the bar and that when they left, he saw Ms. Dowling sit in the driver's seat and Appellant sit in the passenger seat of Appellant's car. On cross-examination, Mr. Damiano first testified that, when he asked Appellant why he had been criminally charged in this matter, Appellant "said he was driving and there was an accident." N.T. Trial, 10/31/22, at 30. Mr. Damiano then immediately changed his testimony and reported that Appellant said "[t]hey were driving; there was an accident." *Id.*

Appellant also testified on his own behalf that he drank one beer on the night in question. He claimed that Mr. Cook never came over to Appellant's car after the accident, calling him a "straight up liar" and a "fake hero." *Id.* at 38. He testified that he initially told Officer Pennington that he was not sure who was driving because he did not want to implicate Ms. Dowling. He

explained that when he and Ms. Dowling whispered to each other, he had told her that everything would be alright and to do what she needed to do.

On November 1, 2022, the jury convicted Appellant of the above crimes, and on January 18, 2023, the trial court sentenced him to an aggregate term of 18 to 36 months of incarceration followed by two years of probation.

That same day, Appellant filed a notice of appeal.[2]  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following five issues on appeal:

1. Was the evidence at trial, in the light most favorable to the verdict winner,[] insufficient to prove the element of identity of the actor—that [Appellant] was the driver of the vehicle at issue—of all offenses[?]

2. Did the trial court err in not allowing the defense to ask a question about a vehicle door being "pinned[,]" and it violated [Appellant's] due process rights under the 5th and 14th amendments of the United States Constitution; and did the trial court err in not allowing the defense to question police officer Chirstopher Pennington about the recovery, or lack thereof, of any DNA evidence as this err[or] violated [Appellant's] due process rights and right to confront witnesses under the 5th, 6th, and 14th [A]mendments of the United States Constitution?

3. Did the trial court err in not allowing the defense to confront the Commonwealth's witness Jordan Cook with video evidence from a red-light camera that was relevant and would have impeached him, in violation of [Appellant's] 6th and 14th [A]mendment rights of the United States Constitution?

4. Did the trial court err by admitting into evidence the entire substance of the complainant's medical records to be admitted

---

[2] After filing a notice of appeal, on January 27, 2023, Appellant filed a post-sentence motion.  Because Appellant's filing of a notice of appeal divested the trial court of jurisdiction to entertain a post-sentence motion, Appellant withdrew it on March 9, 2023.

and read into evidence for all purposes as business records to prove serious bodily injury as the evidence was hearsay and its admission was in violation of [Appellant's] due process rights and right to confront witnesses under the 5th, 6th and 14th [A]mendments of the United States Constitution?

5. Did the trial court err by not instructing the jury on the meaning of gross negligence in section 3732.1 aggravated assault by vehicle and its difference from negligence in section 3735.1 aggravated assault while driving under the influence?

Appellant's Brief at 2-4 (suggested answers and citations to the notes of testimony omitted).

**A.**

In his first issue, Appellant asserts that the Commonwealth failed to adduce sufficient evidence at trial to prove that it was he and not Ms. Dowling who was driving his car at the time of the accident. *Id.* at 18-22.

Our standard of review applicable to challenges to the sufficiency of evidence is well settled. "Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, and taking all reasonable inferences in favor of the Commonwealth, the reviewing court must determine whether the evidence supports the fact-finder's determination of all of the elements of the crime beyond a reasonable doubt." *Commonwealth v. Hall*, 830 A.2d 537, 541–42 (Pa. 2003). A conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Melvin*, 103 A.3d 1, 40 (Pa. Super. 2014). In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for that of the fact-finder. *Id.* at 39-40.

Further, "[t]he facts and circumstances proved must, in order to warrant a conviction, be such as to establish the guilt of the defendant, not necessarily beyond a moral certainty, nor as being absolutely incompatible with his innocence, but at least beyond a reasonable doubt." ***In Interest of J.B.***, 189 A.3d 390, 408 (Pa. 2018) (citation omitted).

Our review of the notes of testimony from Appellant's trial indicates that the Commonwealth presented ample evidence from which the jury, given its role as fact-finder and its purview over credibility determinations, could reasonably conclude that it was Appellant, and not Ms. Dowling, who was driving Appellant's car at the time of the accident. In particular: (1) Mr. Cook testified that when he approached Appellant's car immediately following the accident, he saw Appellant pull Ms. Dowling from the passenger side front seat; (2) the front passenger side of the car had been damaged and Ms. Dowling was injured in the accident; (3) Ms. Dowling's belongings were on the passenger side of the car; (4) after initially telling Officer Pennington that she had been driving, outside of Appellant's presence Ms. Dowling indicated by shaking her head that she had not been driving; and (5) Mr. Damiano initially testified that Appellant had told him he had been driving before quickly changing his testimony. Thus, viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, we conclude that it was reasonable for the jury to infer that Appellant had run the red light and crashed into the Victim's car, and that Ms. Dowling had been in the passenger seat at

the time of the accident.  Appellant is, therefore, not entitled to relief on this claim.

**B.**

In his second and third issues, Appellant purports to challenge three evidentiary rulings.  He asserts that the trial court abused its discretion in not allowing Appellant's counsel to cross-examine: (1) Officer Pennington about (a) the meaning of the word "pinned" and (b) the lack of effort to collect DNA evidence from Appellant's vehicle; and (2) Mr. Cook regarding the red-light camera video of the accident.  Appellant's Brief at 22-23.

It is axiomatic that the argument portion of an appellate brief must be developed with citation to and discussion of relevant authority.  Pa.R.A.P 2119(a)-(c).  "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (internal citation omitted).  "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Id.*  If a deficient brief hinders this Court's ability to address any issue on review, we shall consider the issue waived. *Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa. Super. 2006) (holding that appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record). *See also In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012) (finding that, where the argument portion of an appellant's brief lacked meaningful discussion of, or citation to,

- 10 -

relevant legal authority regarding an issue, the issue was waived because appellant's lack of analysis precluded meaningful appellate review).

"We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018).  To do so would place this Court "in the conflicting roles of advocate and neutral arbiter." ***Commonwealth v. Williams***, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring).  Therefore, when an appellant fails to develop his issue in an argument, the issue is waived. ***Sephakis v. Pa. State Police Bureau of Records and Identification***, 214 A.3d 680, 686-87 (Pa. Super. 2019).

The argument Appellant has presented is underdeveloped.  Appellant has not provided citation to or discussion of any controlling case law in support of his argument that the trial court abused its discretion in these evidentiary rulings.  Appellant's failure to develop these claims has impeded our ability to conduct meaningful appellate review.  Accordingly, Appellant has waived his second and third issues.

## C.

In his fourth issue, Appellant claims that the trial court abused its discretion in admitting the Victim's medical records.[3]  Appellant's Brief at 23-

---

[3] Appellant also claims the trial court should not have permitted the Commonwealth to use Ms. Dowling's medical records at trial.  Our review of Appellant's Rule 1925(b) statement indicates, however, that Appellant did not raise this allegation of error in his statement and the trial court did not address it.  Accordingly, he has not preserved this claim for our review. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived.").

26. In particular, characterizing Officer Pennington's testimony as double hearsay, Appellant argues that the trial court abused its discretion in permitting Officer Pennington to read the contents of Victim's medical records into evidence because the records were "not from the patient[] for the purpose of obtaining treatment," and were, thus, inadmissible under Pa.R.E. 803(4).[4, 5] *Id.* at 26.

We review trial court rulings on the admissibility of evidence for an abuse of discretion. *Commonwealth v. Thompson*, 106 A.3d 742, 754 (Pa. Super. 2014). An abuse of discretion is "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005) (citations omitted).

---

[4] Pa.R.E. 803(4) concerns the admissibility of statements made for medical diagnosis or treatment. Contrary to Appellant's assertion, the trial court did not admit the Victim's medical records pursuant to Rule 803(4). Rather, as described *infra*, the court admitted the records pursuant to Rule 803(6)(B).

[5] Appellant also argues that the records were inadmissible because the "explicit requirements of [Pa.R.E.] 803(6)(A) and (B) do not appear in the one certification for the [] patient[']s records." Appellant's Brief at 25. We find this argument waived as Appellant did not raise it before the trial court or in his Rule 1925(b) statement. *See Commonwealth v. Montalvo*, 641 A.2d 1176, 1185 (Pa. Super. 1994) ("In order to preserve an issue for review, a party must make a timely and specific objection at trial."); Pa.R.A.P. 302(a). (explaining that issues that are not raised in the lower court "are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Lopata*, 754 A.2d 685, 689 (Pa. Super. 2000). ("[a] claim which has not been raised before the trial court cannot be raised for the first time on appeal.").

"[H]earsay is an out of court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule." ***Commonwealth v. Manivannan***, 186 A.3d 472, 480 (Pa. Super. 2018) (citation omitted); Pa.R.E. 801(c).

Appellant asserted at trial that the Victim's medical records were inadmissible hearsay, not subject to any exception. The trial court disagreed and admitted the medical records pursuant to the business records exception to the hearsay exclusion rule. Relevantly, the Rules of Evidence provide that business records are admissible if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11)[6] or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa. R.E. 803(6)(A)-(E).

---

[6] Pursuant to Rule 902(11), a record of a regularly conducted activity is self-authenticating if it is accompanied by a certificate of the custodian. Pa.R.E. 902(11).

Under the business records exception, "hospital records are admissible to show the fact of hospitalization, treatment prescribed, and symptoms given." *Commonwealth v. DiGiacomo*, 345 A.2d 605, 608 (Pa. 1975).

In support of the admission of the Victim's medical records, the Commonwealth produced a certification signed by the records custodian that stated, "the original record was made in the regular course of business at or near the time of the matter recorded." Exh. C-5. The certification further stated that the medical record "was prepared by authorized personnel under [the custodian's] direction." *Id.*

Following our review, we conclude that the trial court did not abuse its discretion in finding that the Victim's medical records, which the hospital custodian of records certified the hospital kept in the course of its regularly conducted business activities, were admissible at trial pursuant to the business records exception. Accordingly, the court properly permitted Officer Pennington to read the contents of the Victim's medical records into evidence to establish the fact that the accident had resulted in the Victim's hospitalization, the symptoms found, and the treatment prescribed. Appellant is, thus, not entitled to relief on this claim.

**D.**

In his final issue, Appellant asserts that the trial court erred in refusing to define "gross negligence" when instructing the jury on the elements of aggravated assault by vehicle. Appellant's Brief at 26-27.

- 14 -

Appellant's argument in support of this claim is woefully underdeveloped. *See id.* In particular, Appellant has failed to include in his brief the text of the jury instruction the court gave to the jury or the instruction he requested the court give, nor has he identified the ways in which he alleges the instruction given was inadequate. Moreover, Appellant has cited to one case—***Commonwealth v. Matroni***, 923 A.2d 444 (Pa. Super. 2007)—for the proposition that "[a]ppellate courts have found that the concept of gross negligence is encompassed within the concept of recklessness." Appellant's Brief at 26. He has not, however, applied the holding of ***Matroni*** to the facts of this case. We cannot and will not develop Appellant's argument for him. Appellant's failure to develop these claims has impeded our ability to conduct meaningful appellate review. Accordingly, Appellant has waived his final issue.

**E.**

In conclusion, having found each of Appellant's issues either meritless or waived, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Stabile concurs in result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/28/2024